UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| BRANDON SIBLEY, ET AL., § | |
| § | |
| *PLAINTIFFS,* § | |
| § | |
| VERSUS § | CIVIL ACTION NO. |
| § | 3:23-cv-24-SMH-CBW |
| SHELLY D. DICK, ET AL., § | |
| § | |
| *DEFENDANTS.* § | |
| § | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
BY DEFENDANT METROPOLITAN SECURITY SERVICES, INC.**

Defendant Metropolitan Security Services, Inc. d/b/a Walden Security ("Walden Security") moves to dismiss all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). This case is about the vaccination-or-mask policy which was applicable to the Russell B. Long Federal Building and U.S. Courthouse (the "Courthouse"). Despite their prolix Complaint, Plaintiffs fail to state any claim against Walden Security.

*First*, Walden Security is entitled to derivative judicial immunity, since Plaintiffs' claims flow from Walden Security personnel carrying out judicial orders. *Second*, Walden Security is a federal contractor, and there are good reasons that courts have never extended *Bivins* to federal contractors. *Third*, Plaintiffs' claim of a conspiracy to discriminate under 42 U.S.C. § 1985(3) fails because such a claim must be based on *racial* animus, and none is alleged here. *Fourth*, Plaintiffs' claim for discrimination in places of public accommodation under 42 U.S.C. § 2000a fails because the place in question, the Courthouse, is simply not within the statutory definition of a "place of public accommodation." *Fifth*, Louisiana law recognizes no stand-alone claim for conspiracy. *Sixth*, Plaintiffs' claims involve an inconvenience that millions of Americans faced

1

on a daily basis, so they fail to state a claim for negligent infliction of emotional distress under Louisiana law. *Seventh*, should any state law claims survive, they should be dismissed.

## BACKGROUND

As is required for a motion to dismiss, the allegations stated below are based on Plaintiffs' allegations in their Complaint; Walden Security does not admit to their veracity.

Plaintiffs Howard Brown and Melanie Jerusalem were litigants with cases in the Middle District of Louisiana. *See* Rec. Doc. 22 – First Am. Compl. (hereafter, "Compl.") ¶¶ 51, 56.[1] At various times, Plaintiffs were denied entry to the Courthouse since they did not provide proof of COVID-19 vaccination, and would not wear a mask.[2] Ms. Jersualem alleges that she put on a mask in order to enter the Courthouse, under "duress." Rec. Doc. 22-12 ¶¶ 5, 7. The sole cause for these events were orders issued by Chief Judge Shelly D. Dick establishing a vaccinate-or-mask policy for entry to the Courthouse. *See* Compl. ¶¶ 43, 72, 75. These orders were carried out by the U.S. Marshals Service or Walden Security, acting pursuant to a contract with, and under the direction of, the U.S. Marshals Service. *See id.* ¶¶ 32, 42, 45, 71, 108-09.

---

[1] The Complaint does not specifically say as much about Mr. Sibley, but it asserts that all the Plaintiffs sought access "to remedy injury to … person and property." Compl. ¶ 51.

There is some confusion due to the Complaint asserting that it describes "only the firsthand experiences of Plaintiff Brown and Sibley" while leaving allegations about Ms. Jerusalem in an attached affidavit, *see* Compl. ¶ 49; Rec. Doc. 22-12 (Jerusalem Aff.), though in reality the Complaint makes allegations regarding Ms. Jerusalem as well, *see* Compl. ¶ 56. This often makes it unclear who, precisely, the Complaint refers to when it uses the term "Plaintiffs."

[2] Allegedly this policy was not always enforced against Ms. Jerusalem. *See* Rec. Doc. 22-12 ¶¶ 6, 8.

Plaintiffs brought claims pursuant to (1) *Bivins*; (2) 42 U.S.C. § 1985; (3) 42 U.S.C. § 2000a; (4) "common law conspiracy"; and (5) negligent infliction of emotional distress. Compl. at p. 8.[3]

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted). Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) are either a "facial" or "factual" challenge. *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981). Under a 'facial" challenge, the allegations in the complaint are assumed to be true. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Under a "factual" challenge," the court may look outside of the pleadings and no presumptive truthfulness attaches to the allegations in the complaint. *Williamson*, 645 F.2d at 413 (citing *Mortensen v. First Federal Savings and Loan Assn.*, 549 F.2d 844, 891 (3rd Cir. 1977)). The district court may dismiss a complaint for lack of subject matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson,* 645 F.2d at 413.

---

[3] This is not the ordering utilized in the Complaint. This memorandum addresses the federal claims first, then the "common law conspiracy" and negligent infliction of emotional distress claims. Further, Plaintiffs' Complaint cites "42 U.S.C. § 2000(a)" as a basis for their discrimination in place of public accommodation claim, but this appears to be a typographical error since no such section exists. Walden Security will analyze that claim under 42 U.S.C. § 2000a.

Under Rule 12(b)(6), a complaint may be dismissed if it fails to "state a claim upon which relief can be granted." The claim cannot be merely speculative, but must be supported by specific factual allegations that make the claim plausible. *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010). "The court does not accept conclusory allegations, unwarranted factual inferences or legal conclusions as true." *Reno v. E. Baton Rouge Par. Sch. Bd.*, 697 F. Supp. 2d 659, 661 (M.D. La. 2010).

## ANALYSIS

**I.     Walden Security is entitled to derivative judicial immunity.**

Chief Judge Dick is entitled to absolute immunity since Plaintiffs' claims flow from orders issued pursuant to her judicial function, as she has explained. *See* Rec. Doc. 51 – Mot. to Dismiss by Chief Judge Dick, pp. 5-7. She also argues that she is entitled to qualified immunity. *Id.* at pp.13-14. Walden Security adopts those arguments here in full.[4] "Derived judicial immunity shields individuals who act pursuant to explicit directions or procedures of a judge …." *Brown v. U.S. Postal Inspection Serv.*, 206 F. Supp. 3d 1234, 1251 (S.D. Tex. 2016). Without this immunity, the persons carrying out judicial orders would become proxy defendants for the issuing judge, and would reasonably fear liability when what is required is immediate and decisive obedience. *See Mays v. Sudderth*, 97 F.3d 107, 112 (5th Cir. 1996).

Here, Plaintiffs make no suggestion that Walden Security's agents did anything *other* than what was required by the Court's administrative orders, and instead make clear that their claims flow from Walden Security personnel acting as directed by the Court's orders. *See* Compl. at p. 9; *id.* ¶¶ 2, 32, 41-43, 75, 92, 108-09, 142, 156. Because Plaintiffs have not made any allegations

---

[4] Walden Security would further note that merely because the orders in question are putatively titled "administrative" does not mean that they were not issued as part of the Court's judicial function. *See Odom v. Martin*, 229 F.3d 1153 (6th Cir. 2000) (holding judges entitled to judicial immunity regarding certain "administrative" order).

4

which would overcome Walden Security's derivative judicial immunity, their claims must be dismissed. *See In re: Brown Med. Ctr., Inc.*, 552 B.R. 165, 174 (S.D. Tex. 2016) (dismissing claims based on derivative judicial immunity). It is irrelevant that Walden Security is a federal contractor, as its agents were performing the same role as the U.S. Marshals. *See In re Foust*, 310 F.3d 849, 855 (5th Cir. 2002) (noting that it is the function performed, not the identity of the actor, that is relevant); *cf. Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 206 (5th Cir. 2009) (explaining that derivative sovereign immunity applies to federal contractors acting within the scope of their contract).

It would be catastrophic if the Courthouse's security personnel were forced into the position of "pseudo-appellate courts scrutinizing" orders to determine if they are legally sound or not. *Mays*, 97 F.3d at 113 (quoting *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir. 1986)). Because Walden Security was carrying out the Court's orders, it is entitled to derivative judicial immunity from Plaintiffs' claims.

## II. There are good reasons to avoid extending Plaintiffs' *Bivins* claim to a new context: federal contractors.

### A. *Bivins* has never applied to federal contractors.

Plaintiffs seek to extend *Bivins* liability to an entirely new category of defendants: federal contractors. Because the Supreme Court has refused to do exactly that, this Court should dismiss Plaintiffs' *Bivins* claims against Walden Security.

It is very difficult to make out a claim under *Bivins v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Just last year, the Supreme Court reiterated that implying causes of action under *Bivins* is "disfavored." *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022). "[B]efore allowing [Plaintiffs] to sue under *Bivins*, we must ask two questions. First, do [Plaintiffs'] claims fall into one of the three existing *Bivins* actions? Second, if not, should we recognize a new *Bivins*

5

action here?" *Cantu v. Moody*, 933 F.3d 414, 421–24 (5th Cir. 2019). There are many ways to distinguish a claim from the three types previously recognized under *Bivins*, including the substance of the claims and the types of defendants. *See id.*

Plaintiffs' allegations are substantively not like the types of claims that have been recognized under *Bivins*. *See Egbert*, 142 S. Ct. at 1802 (describing the recognized *Bivins* claims). But even more distinctly, none of the recognized *Bivins* claims involve suits against the category of defendants into which Walden Security falls, federal contractors. In *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001), the Supreme Court noted that it has "consistently refused to extend *Bivins* liability to any … new category of defendants." The *Malesko* Court refused to find that a corporation serving as a federal prison contractor should be liable under *Bivins*. *Id.* at 74. *Bivins* was "concerned solely with deterring the unconstitutional acts of individual officers," an interest which would not be furthered by permitting an individual's *employer* to be a defendant. *See id.* at 70-72. The Fifth Circuit recently recognized that it would be novel to apply *Bivins* to *any* type of "private entit[y] acting under color of federal law." *Gonzalez v. Gillis*, No. 21-60764, 2022 WL 1164806, at *1 (5th Cir. Apr. 19, 2022); *cf. Minneci v. Pollard*, 565 U.S. 118, 126 (2012) (refusing to extend *Bivins* claim to *private* prison personnel, as this difference in "employment status" was a "critical difference"). And district courts in this Circuit have followed *Malesko* in refusing to extend *Bivins* liability to federal contractors. *See Nevers v. United States Dep't of Just.*, No. CV 21-1064, 2022 WL 278927, at *4 (E.D. La. Jan. 31, 2022); *Rojo-Mendoza v. Rolling Plains Facility*, No. 1:19-CV-00258-BU, 2021 WL 6496852, at *2–3 (N.D. Tex. Apr. 29, 2021); *Castro v. GEO Grp., Inc.*, No. DR-20-CV-033-AM-VRG, 2021 WL 7707811, at *4 (W.D. Tex. Mar. 15, 2021); *Mireles v. MTC Willacy Cnty. Reg'l Det. Facility*, No. 1:19-CV-197, 2020 WL 4678433, at *5–6 (S.D. Tex. July 23, 2020); *Nieblas-Anguamea v. Diamond Pharmacy Servs.*, No. 5:14-CV-

83-DCB-MTP, 2014 WL 5324286, at *1 (S.D. Miss. Oct. 17, 2014). Thus, this case would present a new *Bivins* context, if authorized. This Court is bound by *Malesko* to decline to extend *Bivins*.

Even if any further analysis were necessary, there are special factors present here. First, while Congress has opened some avenues for liability under the Federal Tort Claims Act, it chose not to include federal contractors within the scope of the FTCA. *See United States v. Orleans*, 425 U.S. 807, 814 (1976); *Nevers*, 2022 WL 278927 at *3. This "silence of Congress"—declining to include federal contractors within the scope of FTCA liability—gives reason to pause, and that alone is enough to end the analysis. *See Oliva v. Nivar*, 973 F.3d 438, 443-44 (5th Cir. 2020). Second, courts are "arguably less equipped than Congress" to evaluate whether federal contractors ought to be subject to *Bivins*-type claims, and it is sufficient to defeat a potential extension of *Bivins* if a court "cannot predict the 'systemwide' consequences of recognizing a cause of action under *Bivins*." *Egbert*, 142 S. Ct. at 1803. What, precisely, would be the systemwide consequences of rendering federal contractors subject to *Bivins* liability? While the foreseeable consequences undoubtedly include that it would be more challenging and more expensive for the federal government to obtain the services of contractors, anything further would be raw conjecture for a court. Since Congress is more capable of evaluating the costs and benefits of extending *Bivins* claims to federal contractors, the Court should decline to do so here. Third, a *Bivins* claim that would effectively act as a "vehicle for altering an entity's policy" is not appropriate, *Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017) (quoting *Malesko*, 534 U.S. at 71), yet that is what would happen here. All of Plaintiffs' claims against Walden Security flow from the Middle District of Louisiana's allegedly unconstitutional vaccinate-or-mask policy. Money damages are ordinarily not the best route to address such "large-scale policy decisions." *Ziglar*, 582 U.S. at 144.[5]

---

[5] Chief Judge Dick's Memorandum in Support of her Motion to Dismiss asserts that there are other avenues of relief available. Rec. Doc. 51 - Mem. ISO Mot. to Dismiss, at p. 11.

There is no reason to break the forty-three-year dry spell since a new *Bivins* claim was announced. *See Hernandez v. Mesa*, 140 S. Ct. 735, 741, 743 (2020). The Court should not extend *Bivins* to a new class of defendants, federal contractors, which the Supreme Court already refused to do in *Malesko*.

### B. There is no *respondeat superior* liability under *Bivins*.

Given the absence of *respondeat superior* liability for § 1983 claims, it is unsurprising that *respondeat superior* is similarly not a basis for liability under *Bivins*. *Ziglar*, 582 U.S. at 140; *Dean v. Gladney*, 621 F.2d 1331, 1336 (5th Cir. 1980). Thus, if a *Bivins* remedy is available at all, it would be against the individuals who allegedly injured the Plaintiffs, not against their employer unless it could be shown the employer's policy or custom caused the harm. *See Abate v. S. Pac. Transp. Co.*, 993 F.2d 107, 110–12 (5th Cir. 1993). Here, Plaintiffs make *no* allegations about how any custom or policy of Walden Security led to their injuries. In fact, the Complaint makes quite clear that Plaintiffs' purported injury flows from a judicial order—which Walden Security obviously cannot control. *See, e.g.*, Compl. at 9 (alleging that Walden Security contractors were "directed" to enforce the policy); *id.* ¶ 7 (referring to policy "under the direction of the Court's presiding Judge").[6] Consequently, there can be no claim that Walden Security caused any of Plaintiffs' alleged injuries, and this is an independent ground to dismiss Plaintiffs' *Bivins* claims against Walden Security.

---

[6] The allegation that Walden Security is jointly responsible with Chief Judge Dick, the U.S. Marshal, the Director of the Marshals' Service, and Attorney General Merrick Garland, for establishing the orders at issue in the Complaint, Compl. ¶ 147, is purely conclusory and implausible to boot, and thus should be ignored.

There is a reference to Walden Security agents being told by "someone higher up in the chain of command … not to engage with Plaintiff moving forward on any level." Compl. ¶ 135. Even if more specificity had been given, this instruction itself is not actionable under any of Plaintiffs' claims.

### III. Plaintiffs have failed to state a claim under 42 U.S.C. § 1985(3), since their claims do not involve racial animus.

Plaintiffs bring a claim under 42 U.S.C. § 1985(3),[7] originally part of the Ku Klux Klan Act of 1871. *See Eitel v. Holland*, 787 F.2d 995, 1000 (5th Cir. 1986). Because they do not adequately allege racial animus, a *purpose* to discriminate, or even a conspiracy, their claim fails.

#### A. A claim under § 1985(3) must involve allegations regarding racial animus.

Plaintiffs do not allege a race-based motivation behind any allegations in their Complaint. This absence is sufficient to defeat their claim under § 1985(3). For decades, it has been "well-established" in the Fifth Circuit "that the only conspiracies actionable under section 1985(3) are those motivated by racial animus." *Deubert v. Gulf Federal Savings Bank*, 820 F.2d 754, 757 n.2 (5th Cir. 1987); *see also Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) ("[R]acial animus is required …."); *Newberry v. E. Texas State Univ.*, 161 F.3d 276, 281 (5th Cir. 1998) ("*Deubert* remains the law in this circuit."); *Mousseau v. Bollinger Shipyards, LLC*, No. CV 16-1287, 2017 WL 1091249, at *9–10 (E.D. La. Mar. 23, 2017) (following *Newberry* and *Deubert*); *Adams v. BP Am. Prod. Co.*, No. CIV.A. 10-1607, 2012 WL 1038035, at *3 (W.D. La. Mar. 27, 2012) (dismissing § 1985(3) claim because "plaintiffs have alleged no facts to suggest racial animus"); *Holoway v. Triola*, No. CIV.A. 97-2216, 1997 WL 791472, at *6 (E.D. La. Dec. 22, 1997) ("[P]laintiff's failure to allege race-based animus forecloses his claim under § 1985(3) ….").[8]

---

[7] This section reads:
> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws … the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

[8] The Fifth Circuit has specifically refused to extend § 1985(3) to "conspiracies motivated by religious, as opposed, to racial animus." *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 124 (5th Cir. 1996); *see also McCoy v. Homestead Studio Suites Hotels*, 177

9

**B.    A § 1985(3) conspiracy must have the purpose of discrimination.**

Additionally, an actionable conspiracy under § 1985(3) must have the "*purpose* of depriving" constitutional rights. This language "certainly requires more than disparate impact." *Miss. Women's Med. Clinic v. McMillan*, 866 F.2d 788, 793 n.5 (5th Cir. 1989). Yet Plaintiffs' § 1985(3) claim is explicitly one predicated on a disparate impact. *See* Compl. at p. 8 (claiming "disparate impact"); *id.* ¶ 155 (alleging "disparate impact"). This is a further ground to dismiss Plaintiffs' claim under § 1985(3).

**C.    Plaintiffs' allegations of a conspiracy are conclusory.**

Finally, there must be an "agreement among the defendants" in order to state a claim under § 1983(3). *Adams v. BP Am. Prod. Co.*, No. CIV.A. 10-1607, 2012 WL 1038035, at *3 (W.D. La. Mar. 27, 2012). It is "well settled" that the operative facts of a conspiracy must be alleged with specificity. *Zuniga v. Masse Contracting, Inc.*, 290 F. Supp. 3d 581, 587 (E.D. La. 2017). Plaintiffs have not done that here. In fact, they have not even made the *conclusory* allegation that Walden Security entered into an *agreement* with anyone else. *See* Compl. ¶¶ 153-64 (cause of action under § 1985). Alleging that the defendants acted in concert (*see* Compl. ¶¶ 151, 163) is simply not enough. *See Montgomery v. Walton*, 759 F. App'x 312, 314-15 (5th Cir. 2019) (holding that allegations of conspiracy were conclusory when asserted that defendants acted in concert). In the absence of any specific concrete allegations of an agreement, Plaintiffs have failed to allege a conspiracy under § 1985(3).

---

F. App'x 442, 445–46 (5th Cir. 2006). Even if religious animus were actionable in the Fifth Circuit, Plaintiffs have not alleged that "similarly situated persons outside [their] protected class were treated differently." *See Martinez v. Sprouts Farmers Market, LLC*, No. CV H-21-2096, 2021 WL 4034063, at *3 (S.D. Tex. Sept. 3, 2021) (dismissing discrimination claim against mask policy).

**IV.     Plaintiffs have failed to state a claim under 42 U.S.C. § 2000a, since a federal courthouse is not a "place of public accommodation" within the meaning of the statute.**

Plaintiffs' claim under 42 U.S.C. § 2000a, concerning discrimination in "place[s] of public accommodation," should be dismissed since a courthouse is not within the statutory definition.

**A.     A courthouse does not fall within the statutory definition of "place of public accommodation."**

Section 2000a(a) applies solely to "place[s] of public accommodation," which is specifically defined by the statute.

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, **as defined in this section**, without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a(a) (emphasis added); *id.* § 2000a(b) ("Each of the following establishments which serves the public is a place of public accommodation **within the meaning of this subchapter** …." (emphasis added)). Because there is a statutory definition, that definition controls. *Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 776 (2018).

If a place is not within the statutory definition of "place of public accommodation," there can be no claim. *See Pullins v. Bank*, No. CV 19-00006, 2020 WL 1450560, at *5 (M.D. La. Mar. 25, 2020) (dismissing § 2000a claim based on argument that place in question not within statutory definition); *Brackens v. Big Lots, Inc.*, No. A-06-CA-532 LY, 2007 WL 208750, at *2-3 (W.D. Tex. Jan. 24, 2007); *cf. Daniels v. Advantage Rent-A-Car Inc.*, 80 F. App'x 936, 938 (5th Cir. 2003) (noting that district court rejected claim under § 2000a because place in question not within the definition of public accommodation).

The statute covers places of lodging, food service, gas stations, and entertainment:

> (1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not

11

more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;

(2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;

(3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and

(4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

42 U.S.C. § 2000a(b).

Courthouses are not included in the statutory definition. Nor does the statute include any broader term that arguably would cover the Courthouse. Unsurprisingly, the undersigned has found no case suggesting that a courthouse is within the meaning of "place of public accommodation" under 42 U.S.C. § 2000a(b).[9] "If the statute's language is unambiguous, we apply the plain language absent some resulting absurdity." *In re Settoon Towing, L.L.C.*, 859 F.3d 340, 345 (5th Cir. 2017) (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). The list of covered places in § 2000a(b) unambiguously fails to include courthouses, so Plaintiffs have failed to state a claim under § 2000a.

### B. Even if Plaintiffs had stated a claim, they are not entitled to any kind of damages under § 2000a, and their claim is moot.

A cause of action pursuant to 42 U.S.C. § 2000a solely provides injunctive relief. *Bass v. Parkwood Hosp.*, 180 F.3d 234, 244–45 (5th Cir. 1999). Consequently, Plaintiffs' claim for other

---

[9] Several cases have analyzed whether courthouses are "places of public accommodation" pursuant to Title III of the ADA (*see* 42 U.S.C. § 12181(7)), a similar statute, and all answered in the negative. *See Wilds v. AKHI LLC*, No. 1:21-CV-142-MW-GRJ, 2022 WL 3904134, at *3 (N.D. Fla. July 29, 2022); *Weber v. Eash*, No. 2:15-CV-225-RMP, 2015 WL 7430025, at *3-4 (E.D. Wash. Nov. 20, 2015).

12

relief (including $2 million in damages), *see* Compl. ¶ 177, must be rejected. Plaintiffs can state no claim for declaratory or injunctive relief either, as their claims are mooted by the rescission of the policies at the heart of Plaintiffs' claims. Walden Security joins the arguments on this point ably made by Chief Judge Dick. *See* Rec. Doc. 51 - Memo. ISO Mot. to Dismiss by Chief Judge Shelly D. Dick, pp. 7-9 (explaining why Plaintiffs' declaratory and injunctive relief claims mooted by rescission of the policies). With damages, declaratory relief, and injunctive relief off the table, no relief is available even if Plaintiffs had stated a claim under § 2000a.

### V.   Plaintiffs have failed to state a claim for "common law conspiracy" against Walden Security.

Though Plaintiffs purport to state a separate claim for "common law conspiracy," "[c]ivil conspiracy is not an actionable claim under Louisiana law." *Brown v. City of Cent.*, No. CV 22-264-SDD-RLB, 2023 WL 2950613, at *3 (M.D. La. Jan. 13, 2023). There must be an underlying actionable tort for there to be any conspiracy liability. *Ross v. Conoco, Inc.*, 828 So. 2d 546, 551-52 (La. 2002). Because Plaintiffs have not adequately alleged any underlying tort, this claim must be dismissed. Even if there were an underlying tort, liability would be "imposed via the underlying unlawful act," not a separate claim. *Wright v. United Parcel Serv., Inc. (Ohio)*, No. 3:20-CV-00098, 2020 WL 4457780, at *4 (W.D. La. Aug. 3, 2020).

Furthermore, Plaintiffs have failed to allege the operative facts of a conspiracy with specificity. Plaintiffs make passing reference to "an agreement," but no details on when that agreement took place. *See* Compl. ¶ 166. (Given that Plaintiffs have quite clearly alleged that the source of the alleged unconstitutional actions was a court order, it is difficult to understand precisely what opportunity Walden Security would have had to enter in an *agreement* on the subject.) Since the operative facts of any purported conspiracy have not been alleged with

13

specificity, *Zuniga v. Masse Contracting, Inc.*, 290 F. Supp. 3d 581, 587 (E.D. La. 2017), Plaintiffs have failed to allege a conspiracy.

## VI. Plaintiffs have failed to state a claim for negligent infliction of emotional distress.

It is difficult to imagine how a claim for infliction of emotional distress could arise from an experience that millions of Americans experienced every day for months, if not years. Unsurprisingly, Plaintiffs' allegations fail, as a matter of law, to state a claim for negligent infliction of emotional distress.

Under Louisiana law, a plaintiff must prove five elements to recover under negligent infliction of emotional distress:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element).

*Covington v. Howard*, 146 So. 3d 933, 937 (La. App. 2 Cir. 2014). Here, Plaintiffs fail to plausibly allege that Walden Security breached a duty to them, and that they have suffered the kind of damages for which recovery is permitted.

Plaintiffs cannot show that Walden Security breached any duty to them. Walden Security has identified no authority requiring Courthouse security personnel to deviate from judicial orders identifying who is or is not permitted to enter the Courthouse; it is self-evident that the contrary must be true for the orderly administration of justice. Since Plaintiffs' claim against Walden Security flows from its personnel *following* judicial orders, Walden Security cannot have breached any duty to Plaintiffs.

As to damages, Plaintiffs have asserted that enforcing the vaccinate-or-mask policy resulted in infliction of "emotional distress, mental anxiety, and … physical symptomatologies that torment mind, body, and soul …." Compl. ¶¶ 180, 182.[10] These "rote" allegations of mental distress are not sufficient. *Montgomery v. Cap. One Bank (USA), N.A.*, No. CV 22-347-SDD-SDJ, 2023 WL 2705860, at *13 (M.D. La. Mar. 14, 2023). This would be true even in Louisiana state courts, which will dismiss a case absent specific allegations detailing the damages underpinning a negligent infliction of emotional distress claim. *See Cunningham v. City of New Orleans*, 336 So. 3d 977, 992 (La. App. 4 Cir. 2022) (affirming grant of exception on intentional infliction of emotional distress claim due to failure to plead specific facts regarding damages), writ denied, 339 So. 3d 1185 (La. June 22, 2022); *Mahfouz*, 149 So. 3d at 855 (affirming trial court's grant of exception).

Even if Plaintiffs' allegations of damages were not conclusory, there would still be no claim. There are four categories of cases giving rise to negligent infliction of emotional distress: (1) distress stemming from a separate tort causing injury to person or property; (2) mental anguish from intentional infliction of distress; (3) the plaintiff directly participates in the event leading to an injury; or (4) a bystander observing an injury. *See Collett v. Weyerhaeuser Co.*, No. CV 19-

---

[10] Plaintiffs allege that they "were humiliated, shamed, scoffed, threatened, coerced, and ultimately denied access …." Compl. ¶ 182. But "insults, indignities, threats, annoyances, [and] petty oppressions" are not sufficient. *Mahfouz v. Davenport*, 149 So. 3d 845, 855 (La. App. 3 Cir. 2014) (quoting *Preis v. Durio,* 649 So. 2d 600, 602 (La. App. 3 Cir. 1994)).

Plaintiffs also alleged that they "have had to digest a lifetime's worth of legal knowledge which has resulted in increased expenses that were not scheduled, alterations of daily routines, sleep loss, re-arrangement of travel plans, weight loss, and other physical symptamologies …." Compl. ¶ 181. Walden Security cannot find any case authorizing an infliction of emotional distress claim for "digest[ing] a lifetime's worth of legal knowledge" and whatever consequences follow from doing so.

To the extent Plaintiffs suggest that "physical symptamologies" and "weight loss" constitute physical injury, they do not. *Covington v. Howard*, 146 So. 3d 933, 941 (La. App. 2 Cir. 2014).

15

11144, 2021 WL 2579801, at *5 (E.D. La. June 23, 2021), aff'd, No. 21-30449, 2022 WL 2387352 (5th Cir. July 1, 2022). Except in those four circumstances, "[r]ecovery … is limited to cases where 'special circumstances' exist involving the 'especial likelihood of real and serious mental distress.'" *Id.* (quoting *Moresi v. State ex rel. Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1096 (La. 1990)). This requirement ensures "the genuineness of the injury claimed." *Moresi*, 567 So. 2d at 1096. Because Plaintiffs' case transparently does not fall into the four ordinary categories, "special circumstances" must be shown.

No special circumstances are evident in the Complaint. Being barred entry from a federal building upon the condition of showing proof of vaccination, or wearing a mask, which millions of Americans experienced for months, is not the stuff that makes up an infliction of emotional distress claim. This is exactly the kind of case for which the "special circumstances" requirement exists—to separate legitimate from illegitimate claims.

Having made no allegations showing extreme or extraordinary conduct, or the kind of "special circumstances" that would otherwise justify a claim, Plaintiffs' have failed to state a claim for negligent infliction of emotional distress. *See Boquet v. Belanger*, No. CIV.A. 14-2228, 2015 WL 1650255, at *6 (E.D. La. Apr. 14, 2015).

**VII.    The Court should decline to exercise supplemental jurisdiction if any state law claims remain.**

This Court has supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a). But the Court may decline to exercise that jurisdiction if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

16

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(b). The "general rule" is for federal courts to dismiss remaining state claims if all federal claims have been dismissed. *Priester v. Lowndes Cnty.*, 354 F.3d 414, 425 (5th Cir. 2004). If any state claims remain after finding that Plaintiffs have failed to state a federal claim, the Court should follow that rule here.

## CONCLUSION

Walden Security, which has only been alleged to be carrying out judicial orders, is entitled to derived judicial immunity from Plaintiffs' claims. Regardless, each of Plaintiffs' claims fail. The Court should not extend *Bivins* to a federal contractor, like Walden Security. In the absence of allegations of racial animus, no claim can be stated under 42 U.S.C. § 1985(3). Nor is the Courthouse a covered "place" under 42 U.S.C. § 2000a. Plaintiffs' remaining state law conspiracy and negligent infliction of emotional distress claims have not been adequately pleaded either, but should be dismissed even if they have, pursuant to 28 U.S.C. § 1367(b).

Walden Security respectfully requests that its motion be granted.

Respectfully submitted on this the 1st day of June, 2023.

THE KULLMAN FIRM

By: */s/ Christine S. Keenan*
CHRISTINE S. KEENAN, T.A. (No. 23293)
ELIZABETH BAILLY BLOCH (No. 37591)
4605 Bluebonnet Boulevard, Suite A
Baton Rouge, Louisiana 70809
Telephone: (225) 906-4250
Facsimile: (225) 906-4230
E-mail:csk@kullmanlaw.com
         ebb@kullmanlaw.com

*Attorneys for Defendant Metropolitan Security Services, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of June, 2023, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record. I further certify that a copy has been forwarded via first class mail, postage prepaid and properly addressed, to *pro se* Plaintiffs as follows:

Brandon Albert Sibley
17517 Cline Drive
Maurepas, LA 70449

Howard Gary Brown
1344 Lakeridge Drive
Baton Rouge, LA 70802

Melanie Jerusalem
5130 Woodside Drive
Baton Rouge, LA 70808

*/s/ Christine S. Kennan*
CHRISTINE S. KEENAN