## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BRANDON ALBERT SIBLEY, et al.**                    **CIVIL ACTION**

**VERSUS**                                           **NO. 23-24-SMH-CBW**

**SHELLY D. DICK, et al.**

---

### MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S RULE 12(b)(1), (6) MOTION TO DISMISS CLAIMS AGAINST THE MARSHAL DEFENDANTS

---

*Pro Se* Plaintiffs filed their lawsuit against various federal Defendants alleging that certain Administrative Orders issued during the COVID-19 pandemic at the Russell B. Long Federal Building and United States Courthouse (the "Federal Courthouse") violated their constitutional rights.  The United States now moves the Court to dismiss the Plaintiffs' claims against the following federal Defendants (collectively, the "Marshal Defendants") on Rule 12(b)(1) and Rule 12(b)(6) grounds:  United States Marshals Service; United States Marshal William Brown, in his official and individual capacity; Deputy United States Marshal Jeff Bowie, in his official and individual capacity; Supervisory Deputy United States Marshal Michael Attaway, in his official and individual capacity; Attorney General Merrick B. Garland, in his official capacity; and Director Ronald L. Davis of the United States Marshals Service, in his official capacity.

As of May 10, 2023, all of the Administrative Orders upon which Plaintiffs base their claims have been rescinded.[1]  So Plaintiffs' claims for injunctive and declaratory relief in this

---

[1] On April 25, 2023, Chief Judge Shelly D. Dick issued Administrative Order No. 2023-3, which rescinded Administrative Order 2023-1 as of May 10, 2023.  Prior to that, on March 29, 2023, Chief Judge Dick issued Administrative Order No. 2023-2, which rescinded Administrative Order No. 2022-3 so that entrants to the Federal Courthouse were no longer required to wear a mask, regardless of their vaccination status.  As for Administrative

lawsuit are now moot, divesting the Court of subject matter jurisdiction.  Plaintiffs' other claims are also subject to dismissal.  In particular, Plaintiffs have failed to assert cognizable claims against the Marshal Defendants under *Bivens*, 42 U.S.C. § 2000a, or 42 U.S.C. § 1985, and those claims should be dismissed under Rule 12(b)(6).  Further, the only potential waiver of the United States' sovereign immunity for the Plaintiffs' state law claims is the Federal Tort Claims Act (FTCA), but Plaintiffs have neither asserted their claims under the FTCA nor exhausted their administrative remedies under that statute.  So the Court lacks jurisdiction over Plaintiffs' state law claims, which should be dismissed under Rule 12(b)(1).

The United States therefore requests that the Court grant this motion and dismiss all claims against the Marshal Defendants.

## I.    FACTUAL BACKGROUND

Plaintiffs, Brandon Sibley and Howard Brown, originally commenced their *pro se* lawsuit on January 17, 2023, against the following federal Defendants:  the United States Marshals Service (USMS); Chief Judge Shelly D. Dick, in her individual and official capacity; United States Marshal (USM) William Brown, in his individual and official capacity;  USM Jeff B, in his individual and official capacity; Merrick B. Garland, in his official capacity as Attorney General of the United States; and Director Ronald L. Davis, in his official capacity as Director of the United States Marshals Service.  ECF Doc. 1.  Subsequently, on March 29, 2023, Plaintiffs filed an *Amended Complaint*.  ECF Doc. 22.  In their *Amended Complaint*, Plaintiffs added Melanie Jerusalem as an additional plaintiff and the following Defendants: Metropolitan Security Services, Inc. (a/k/a Walden Security); Supervisory Deputy United States Marshal (SDUSM) Michael

Order No. 2020-8, it was superseded by Administrative Order No. 2020-9 on September 30, 2020, and Administrative Order No. 2021-5 was rescinded and superseded by Administrative Order No. 2022-3 on March 15, 2022.  All Administrative Orders are available to the general public on the Court's website.  U.S. Dist. Ct. for the Middle Dist. of La., *Orders*, https://www.lamd.uscourts.gov/orders-public (last visited June 9, 2023).

Attaway, in his individual and official capacity; and Deputy United States Marshal (DUSM) Jeff Bowie, in his individual and official capacity.   ECF Doc. 22.   Plaintiffs' claims arise out of requirements that were placed on all entrants to the Federal Courthouse pursuant to Administrative Orders 2020-8, 2021-5, and 2022-3 during the COVID-19 pandemic.   Plaintiffs allege that "Administrative Orders No. 2020-8, No. 2022-3, and 2021-5 by Chief Judge, Shelly D. Dick, allowed for <u>NO</u> exemptions, thereby chilling and deterring Plaintiffs' right for self-determination and access to the courts for grievances." ECF Doc. 22, ¶ 43 (emphasis original).

Plaintiffs "are individuals and general members of the public who seek access to the Public Federal Courthouse in Baton Rouge, Louisiana, to remedy injury to Plaintiffs' person and property."   ECF Doc. 22, ¶ 51.   They further allege that "both Plaintiffs, have never taken an emergency use authorized vaccine for Covid-19, have never tested positive for Covid-19, have never been hospitalized for Covid-19, and are both healthy active men of sound mind and body." ECF Doc. 22, ¶ 52.   Plaintiffs Brown and Jerusalem claim to be involved in "federal litigation in the Middle District of Louisiana to seek redress for grievances for injury to Plaintiffs and requires open access, without denial . . . to the Federal Public Courthouse located at <u>777 Florida Street in Baton Rouge, Louisiana</u>, any other accommodation, different from those vaccinated, <u>IS the very definition of discrimination</u>." ECF Doc. 22, ¶ 56 (emphasis original).

Collectively, Plaintiffs allege they attempted to enter the Federal Courthouse on four separate occasions when the Administrative Orders were in effect.   Initially, Plaintiffs entered the Federal Courthouse on November 6, 2020, before COVID-19 vaccines were available, to file a complaint with the Clerk.   ECF Doc. 22, ¶ 61.   Plaintiffs informed an individual wearing a white U.S. Marshal's uniform that they "were exempt from the mask mandate for religious and medical reasons." ECF Doc. 22, ¶¶ 62-63.   Relying on Administrative Order No. 2020-8, SDUSM Attaway

3

and other unknown masked men informed Plaintiffs that, as a condition of entry to the Federal Courthouse, they would need to submit to the following: "a. A temperature reading of their person; b. Wear a medical device [mask] not prescribed by a doctor; c. Submit to a warrantless search of their persons and effects." ECF Doc. 22, ¶¶ 72; 75. Plaintiffs were provided with an email address for the Clerk of Court in order to communicate about their complaint. ECF Doc. 22, ¶ 76.

Plaintiffs claim that Mr. Howard Brown returned to the Federal Courthouse on two subsequent occasions, April 18, 2022, and June 9, 2022, and that all Plaintiffs returned to the Federal Courthouse on May 27, 2022. ECF Doc. 22, ¶¶ 80, 119, 129. On each occasion, Plaintiffs were told they would either need to provide proof of their COVID-19 vaccination status or wear a mask to enter the courthouse. ECF Doc. 22, ¶¶ 81, 83, 119, 123, 129. Plaintiffs claim that Defendants' actions trespassed upon their persons and property and "the court was effectively closed causing irreparable harm to Plaintiffs denying them adequate remedy by due process of law and justice . . . ." ECF Doc. 22, ¶¶ 90, 128.

Plaintiffs bring forth various claims against the Marshal Defendants. Plaintiffs assert *Bivens* claims against the Marshal Defendants for "[a]cting under the color of law," specifically Administrative Order Nos. 2020-8, 2021-5, and 2022-3, thereby "deny[ing] Plaintiffs' rights, privileges, or immunities" under the Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution. ECF Doc. 22, ¶ 142. Plaintiffs also assert 42 U.S.C. § 1985 claims against all Defendants for conspiring "to deprive the Plaintiffs of equal protection, equal privileges, and immunities as guaranteed by the constitution and laws of the United States and the State of Louisiana" through the implementation of the Court's Administrative Orders. ECF Doc. 22, ¶¶ 160; 162. According to the Plaintiffs, there are two classes of individuals in the Federal Courthouse—the vaccinated and the unvaccinated. ECF Doc. 22, ¶¶ 154; 155. Plaintiffs assert a

common law conspiracy claim against all Defendants for denying them access to the Federal Courthouse without legal or lawful authority to do so. ECF Doc. 22, ¶ 167. They also assert a state law negligent infliction of emotional distress claim against Defendants for breaching their duties as "reasonable men" and "recklessly and callously using the threat of force and deadly weapons to deny access to the courthouse, deny due process, and violate Plaintiffs' substantive rights" based on the Court's Administrative Orders. ECF Doc. 22, ¶ 180.

Plaintiffs are seeking various forms of relief for their claims. ECF Doc. 22, ¶¶ 183-190. They seek injunctive relief preventing Defendants from applying the Court's Administrative Orders, declaratory judgment that Administrative Order Nos. 2020-8, 2021-5, and 2022-3 are facially unconstitutional, the empanelment of a grand jury to investigate crimes being committed at the Federal Courthouse, compensatory and punitive damages, costs, and attorney's fees.[2]  ECF Doc. 22, pp. 48-49.

## II.    LEGAL STANDARD

A Rule 12(b)(1) motion seeks dismissal of a complaint for lack of subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted).  "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Ramming v.*

---

[2] "[Section] 1988 allows a court in its discretion to award reasonable attorney's fees to the prevailing party in civil rights actions under §§ 1981, 1982, 1983, 1985, and 1986." *Fountain v. Thomas*, No. 6:22-CV-00431-JDK-KNM, 2023 WL 2058692, at *5 (E.D. Tex. Jan. 10, 2023), *report and recommendation adopted*, 2023 WL 2054274 (E.D. Tex. Feb. 16, 2023).  Even so, Plaintiffs are not entitled to attorney's fees since they are proceeding *pro se* and have failed to state a viable claim under 42 U.S.C. § 1985.  *Cf. Danial v. Daniels*, 162 F. App'x 288, 291 (5th Cir. 2006) ("Attorney's fees are not available to a non-attorney *pro se* litigant.").

*United States*, 281 F.3d 158, 161 (5th Cir. 2001).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Id.*

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When resolving a Rule 12(b)(6) motion, a district court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citation and internal quotation marks omitted).

## III.   ARGUMENT

The crux of this dispute is Plaintiffs' disagreement with various administrative orders requiring masking or vaccination as a condition of entry to the Federal Courthouse in Baton Rouge. But those orders have now been rescinded.  So any claims for injunctive or declaratory relief against the Marshal Defendants are moot.  And Plaintiffs' remaining claims are legally deficient. This case should therefore be dismissed.

### A.  Administrative Order No. 2023-2 Has Mooted Plaintiffs' Claims for Injunctive and Declaratory Relief

The primary relief sought in Plaintiffs' *Amended Complaint* is injunctive and declaratory relief precluding enforcement of any vaccination or masking requirements at the Federal Courthouse.  The problem for Plaintiffs is there's nothing left to enjoin.  Through Administrative Order No. 2023-2, Chief Judge Dick has eliminated such requirements.  So Plaintiffs are now free

to handle any business that they may have at the Federal Courthouse without masking or vaccination.  In other words, their claims for injunctive and declaratory relief are now moot, depriving this Court of subject matter jurisdiction over those claims.

All of Plaintiffs' claims in this case arise out of the issuance and implementation of certain Administrative Orders (Administrative Order Nos. 2020-8, 2021-5, and 2022-3) issued by Chief Judge Dick that placed requirements on all persons seeking entrance to the Federal Courthouse during the COVID-19 pandemic.  Administrative Order Nos. 2020-8 and 2021-5 required all entrants to the Federal Courthouse to wear masks in any public space.  Administrative Order No. 2022-3, which went into effect on March 15, 2022, lifted the masking requirement for all fully vaccinated individuals, but anyone who could not prove their vaccination status or who was not fully vaccinated was required to wear a mask in order to enter the Federal Courthouse.  Those who failed or refused to comply with Administrative Order No. 2022-3, were required to leave the Federal Courthouse.

But on March 29, 2023, Chief Judge Dick issued Administrative Order No. 2023-2, Recission of Pandemic Masking Requirements. Administrative Order No. 2023-2 rescinds Administrative Order No. 2022-3 and provides as follows:

> In response to changes to Centers for Disease Control guidance and positive developments in the COVID-19 community infection rates within the District, **IT IS ORDERED** that entrants to the Russell B. Long Federal Building and United States Courthouse and the U.S. Bankruptcy Court ("the Courthouses") are no longer required to wear a mask, regardless of vaccination status.

Administrative Order No. 2023-2 (emphasis original).  Considering the plain language of Administrative Order No. 2023-2, all persons seeking entry to the Federal Courthouse may do so now without wearing a mask, regardless of their COVID-19 vaccination status.

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). "To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (citation omitted). As the Fifth Circuit recently explained, "[a] case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Gonzalez v. Gillis*, No. 21-60634, 2023 WL 3197061, at *5 (5th Cir. May 2, 2023) (citation and internal quotation marks omitted). "Reframed in the familiar taxonomy of standing and ripeness, 'this means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Shemwell v. City of McKinney, Tex.*, 63 F.4th 480, 483 (5th Cir. 2023) (quoting *Spencer v. Kemma*, 523 U.S. 1, 8 (1988)). "Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *DeOtte v. Nevada*, 20 F.4th 1055, 1064 (5th Cir. 2021) (citation and internal quotation marks omitted).

Here, Plaintiffs lost a legally cognizable interest in this case on March 29, 2023, when the Court issued Administrative Order No. 2023-2, which eliminated the requirement that either proof of COVID-19 vaccination status or the wearing of masks were necessary to enter the Federal Courthouse. All of Plaintiffs' claims are based on how the Court's past Administrative Orders—which are no longer in effect—were applied to them. Generally, "a request for an injunction is moot 'upon the happening of the event sought to be enjoined.'" *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) (quoting *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1988)).

Pursuant to the current Administrative Order No. 2023-2, Plaintiffs may now come and go to the Federal Courthouse without their COVID-19 vaccination status being a consideration and without the necessity of wearing a mask.  Since there "can be no meaningful relief granted by an injunctive order enjoining the defendants" from applying the rescinded Administrative Orders, Plaintiffs' claims for injunctive and declaratory relief are moot.  *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co*., 704 F.3d 413, 426 (5th Cir. 2013).

Further, no exception to the mootness doctrine applies here.   Although the case-in-controversy has been facially mooted by the Court's voluntary cessation of requiring that entrants to the Federal Courthouse provide proof of COVID-19 vaccination status or wear a mask, mootness remains.   "In general, a defendant's voluntary conduct moots a case only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Freedom from Religion Found., Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023) (citation and internal quotation marks omitted).   However, governmental entities, such as the Marshal Defendants, bear a "'lighter burden' . . . in proving that the challenged conduct will not recur once the suit is dismissed as moot."  *Id*. (quoting *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014)).   In fact, "courts are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude . . . ."  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009); *see also Freedom from Religion Found., Inc.*, 58 F.4th at 833 ("[T]he government's ability to reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception.").

Each of the Administrative Orders at issue in this case arose out of the Court's response to the COVID-19 pandemic.   On March 16, 2020, the Court issued its first pandemic-related Administrative Order (Administrative Order No. 2020-1) "in response to the COVID-19 virus

(coronavirus) outbreak in Louisiana" and referenced the March 13, 2020 declaration of a National Emergency by the President of the United States.[3]  Since then, approximately 19 other pandemic related Administrative Orders have been issued by the Court, of which Plaintiffs only complain of three.  The latest Administrative Order 2023-2, issued on March 29, 2023, rescinded all COVID-19 related requirements to enter the Federal Courthouse and came into effect approximately 1 month before the federal COVID-19 Public Health Emergency came to an end.[4]  Further, the President signed H.J. Res. 7 on April 10, 2023, which terminates the national emergency related to the COVID-19 pandemic.[5]  The COVID-19 public health emergency otherwise ended on May 11, 2023.[6]  So at this juncture there is no reasonable expectation that any further Administrative Orders requiring COVID-19 vaccination status or masking to enter the Federal Courthouse will be implemented or applied by federal governmental actors.[7]

Plaintiffs' claims for injunctive and declaratory relief should therefore be dismissed.

---

[3] Chief Judge Dick signed Administrative Order No. 2020-1 on March 13, 2020 and it is available to the public on the Court's website at the following link: https://www.lamd.uscourts.gov/orders/public_orders/ao-2020-1.pdf.  It is well-recognized that courts may take judicial notice of government websites.  *Cf. Garteiser Honea, P.C. v. Moskowitz*, No. 2:18-CV-00372-JRG, 2018 WL 6617780, at *2 n.1 (E.D. Tex. Dec. 18, 2018) (stating that "[i]nformation obtained from online sources is becoming a frequently used basis for judicial notice" and that "government and corporate websites and well-recognized mapping services are among the most commonly relied upon sources" (citation and internal quotation marks omitted)).

[4] *See, e.g.*, U.S. Dep't of Health & Human Servs., *Fact Sheet: End of the COVID-19 Public Health Emergency* (May 9, 2023), https://www.hhs.gov/about/news/2023/05/09/fact-sheet-end-of-the-covid-19-public-health-emergency.html#:~:text=Based%20on%20current%20COVID%2D19,day%20on%20May%2011%2C%202023 (last visited June 7, 2023).

[5] *See* The White House, *Bill Signed: H.J. Res. 7* (Apr. 10, 2023), https://www.whitehouse.gov/briefing-room/legislation/2023/04/10/bill-signed-h-j-res-7/ (last visited June 7, 2023).

[6] *See, e.g.*, Ctrs. for Disease Control & Prevention, *End of the Federal COVID-19 Public Health Emergency (PHE) Declaration* (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=May%2011%2C%202023%2C%20marks%20the,to%20the%20COVID%2D19%20pandemic (last visited June 7, 2023).

[7] For the same reasons, the exception to mootness for issues "capable of repetition yet evading review" is inapplicable here.  *See Spell v. Edwards*, 962 F.3d 175, 180 (5th Cir. 2020) (declining to apply the exception where it was "speculative, at best" that COVID restrictions would be reimposed).

### B. Plaintiffs Have Failed to Allege Cognizable *Bivens* Claims

As an initial matter, *Bivens* claims may only be asserted against a federal officer in his or her individual capacity. *See Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999) (stating that *Bivens* "provides a cause of action only against government officers in their individual capacities."). So to the extent Plaintiffs' *Bivens* claims are asserted against any of the Marshal Defendants in their official capacities, those claims should be dismissed.

With regard to Plaintiffs' individual capacity claims against certain Marshal Defendants,[8] the Supreme Court has admonished that "recognizing a cause of action under *Bivens* is a disfavored judicial activity." *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (citation and internal quotation marks omitted). Consideration of a *Bivens* remedy focuses on "a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* If so, then no *Bivens* remedy is available, requiring the dismissal of a plaintiff's claims. And "[t]he answer to that question is usually Congress." *Oliva v. Nivar*, 973 F.3d 438, 443 (5th Cir. 2020).

To date, the Supreme Court has authorized *Bivens* actions only three times. First, in *Bivens* itself, "the Court recognized an implied cause of action to sue federal officers for violating an arrestee's 'rights of privacy' by 'manacl[ing] petitioner in front of his wife and children,' 'threaten[ing] to arrest the entire family,' and 'strip searching him.'" *Cantú v. Moody,* 933 F.3d 414, 421 (5th Cir. 2019) (quoting *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, at 389-90 (1971)) (alterations original). Second, in *Davis v. Passman*, 442 U.S. 228 (1979), the Court recognized "a Fifth Amendment equal protection claim for employment discrimination by a congressman . . . ." *Cantú*, 933 F.3d at 421. Third, the Court

---

[8] In particular, Plaintiffs assert individual capacity claims against USM William Brown, SDUSM Michael Attaway, and DUSM Jeff Bowie.

acknowledged "an Eighth Amendment claim for inadequate medical care by federal jailers" in *Carlson v. Green*, 446 U.S. 14 (1980). *Cantú*, 933 F.3d at 421. "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abassi*, 582 U.S. 120, 131 (2017).

Before recognizing a *Bivens* claim in a particular case, a federal court must apply a two-part test. "First, the court must decide if the case before it involves a 'new context' that is distinct from *Bivens*, *Davis*, and *Carlson*." *Canada v. United States*, 950 F.3d 299, 306 (5th Cir. 2020). "If so, the court must then assess whether there are 'special factors' counselling hesitation to extending a *Bivens* claim to this context." *Id.* The Supreme Court has emphasized that its understanding of a "new context" is "broad." *Hernández v. Mesa*, 140 S. Ct. 735, 743 (2020). If the case "is different in a meaningful way from" the three Supreme Court decisions recognizing *Bivens* actions in the past, then the context is new. *Abbasi*, 582 U.S. at 139.

"The 'new context' analysis focuses on whether the case differs in a meaningful way from previous *Bivens* cases decided by the Supreme Court, not a three-judge court of appeals panel." *Canada*, 950 F.3d at 308. "A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Abbasi*, 582 U.S. at 139-40.

Plaintiffs' allegations in this case—regarding masking and vaccination requirements imposed by administrative orders from a federal district judge for entry into a federal courthouse—

are wholly dissimilar from *Bivens*, *Davis*, and *Carlson*.  So they necessarily implicate a new *Bivens* context.  *See Oliva*, 973 F.3d at 442 (observing that "[v]irtually everything" other than the circumstances of *Bivens*, *Davis*, and *Carlson* "is a new context" (citation and internal quotation marks omitted)).  Also, none of the three Supreme Court cases recognizing a *Bivens* remedy involved claims against U.S. Marshals.  Here, then, Plaintiffs' claims seek to extend *Bivens* to "a new category of defendants . . . ." *Egbert*, 142 S. Ct. at 1803 (citation and internal quotation marks omitted)*.*  Further, Marshal Brown is not a narcotics agent but a presidentially appointed, Senate-confirmed federal officer.  28 U.S.C. § 561(c).

More still, USMS officers operate under a different "statutory mandate" than the narcotics agents in *Bivens*.  The USMS's primary role and mission is "to provide for the security and to obey, execute, and enforce all orders of the United States District Courts . . . ." 28 U.S.C. § 566(a).  In so doing, the USMS "shall execute all lawful writs, process, and orders issued under the authority of the United States, and shall command all necessary assistance to execute its duties." 28 U.S.C. § 566(c).  Thus, whereas *Bivens* involved agents sued "for handcuffing a man in his own home without a warrant" while investigating drug violations, the alleged violation here is the statutorily mandated enforcement and execution of administrative orders issued by the Chief Judge of this Court—undoubtedly, a "new context."

Therefore, the only question is whether special factors counsel against extending the *Bivens* remedy.  They do.  First, "Congress has designed an alternative remedial structure" for torts by federal officers through the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2674.  And the Fifth Circuit has stated that "[a]lthough an alternative form of relief is not a necessary special factor, it may be a sufficient one."  *Oliva*, 973 F.3d at 444.  Second, "the separation of powers is itself a special factor."  *Id.*  "Because Congress has long been on notice that the Supreme Court is

13

disinclined to extend *Bivens* to new contexts, its failure to provide a damages remedy here suggests more than mere oversight." *Cantú*, 933 F.3d at 423 (citations and internal quotation marks omitted). Third, an agency's grievance procedures and regulatory obligations to investigate complaints of officer misconduct is sufficient to preclude a *Bivens* remedy. *Egbert*, 142 S. Ct. at 1806. And USMS has a robust administrative process to address employee misconduct, including alleged violations of the law. Pursuant to 28 C.F.R. § 0.111(n), the Director of USMS "shall direct and supervise all activities of the U.S. Marshals Service . . . [including the] [i]nvestigation of alleged improper conduct on the part of U.S. Marshals Service personnel." The Director is also empowered to "[a]pprov[e] . . . staffing requirements of the offices of the U.S. Marshals." 28 C.F.R. § 0.111(m). Accordingly, USMS personnel may be subject to discipline, including removal from office, for acts of misconduct. Under the Director's delegated authority, USMS's Office of Professional Responsibility, Internal Affairs (OPR-IA) investigates employee misconduct and addresses complaints regarding USMS personnel or programs for appropriate administrative action.[9] Through OPR-IA, the Director of the USMS has adopted, *inter alia,* USMS policy Directive 2.3, requiring investigations for misconduct. In particular, USMS Policy Directive 2.3(A)(4) states that "[a]ll complaints of employee misconduct will be investigated by the appropriate agency or office."[10]

The USMS is also subject to oversight by the Department of Justice's Office of Inspector General to address complaints of misconduct, including civil rights violations.[11] That oversight, and the prospect of criminal prosecution, are additional deterrents of official abuse and mitigate

---

[9] *See* U.S. Marshals Serv., Office of Professional Responsibility, https://www.usmarshals.gov/who-we-are/office-of-professional-responsibility (last visited June 2, 2023).

[10] U.S. Marshals Serv., Policy Directive 2.3(A)(4), https://www.usmarshals.gov/sites/default/files/media/document/usms-policy-directive-misconduct-investigations.pdf (last visited June 7, 2023).

[11] *See generally* U.S. Dep't of Justice, Office of the Inspector General, https://oig.justice.gov/ (last visited June 2, 2023).

the need for a judicially implied *Bivens* remedy.  Section 1001 of the USA PATRIOT Act, signed into law on October 26, 2001, directs the Inspector General to review information and receive complaints alleging abuses of civil rights and civil liberties by Department of Justice (DOJ) employees.[12] USA PATRIOT Act of 2001, Pub. L. No. 107-56.  Pursuant thereto, allegations related to abuse of civil rights and civil liberties by DOJ employees, including the USMS, are typically assigned to OIG Investigations Division special agents, who "investigate alleged violations of fraud, abuse and integrity laws that govern DOJ employees, operations, grantees and contractors."[13]  "These investigations sometimes lead to criminal prosecution or civil or administrative action."[14]

Therefore, Plaintiffs' purported *Bivens* claims should not be recognized and should be dismissed.

### C.  The Individual Marshal Defendants Are Entitled to Qualified Immunity

Even if Plaintiffs could assert viable *Bivens* claims against the individual Marshal Defendants (which they cannot), their claims should still be dismissed based on those Defendants' qualified immunity.

"Qualified immunity shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Petzold v. Rostollan*, 946 F.3d 242, 255 (5th Cir. 2019) (citation omitted).  Further, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Abbasi*, 582 U.S. at 152 (citation

---

[12]  *See* U.S. Dep't of Justice, Office of the Inspector General, *Submitting a Complaint*, https://oig.justice.gov/hotline/submit_complaint (last visited June 2, 2023).
[13]  U.S. Dep't of Justice, Office of the Inspector General, *Criminal and Civil Cases*, https://oig.justice.gov/investigations/criminal_and_civil_cases (last visited June 2, 2023).
[14] *Id.*

and internal quotation marks omitted).  "To rebut the qualified immunity defense, a plaintiff must show two things: (1) the allegations make out a violation, and (2) the violation was 'clearly established' at the time of the defendant's conduct." *Petzold*, 946 F.3d at 255 (citation omitted). In other words, the burden is on Plaintiffs to show that the individual Marshal Defendants are not entitled to qualified immunity in this case. *See Kovacic v. Villareal*, 628 F.3d 209, 211 (5th Cir. 2010) ("Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available.").

Plaintiffs cannot meet their burden here.  First, "courthouse premises are subject to the control of the court." *Sheppard v. Maxwell*, 384 U.S. 333, 358 (1966).  And, as previously stated, the USMS's primary role and mission is "to provide for the security and to obey, execute, and enforce all orders of the United States District Courts . . . ." 28 U.S.C. § 566(a).  In so doing, the USMS "shall execute all lawful writs, process, and orders issued under the authority of the United States, and shall command all necessary assistance to execute its duties." 28 U.S.C. § 566(c). Second, "[c]ourts presented with constitutional challenges to mask requirements in a variety of settings have routinely found that mask mandates do not violate a protected liberty interest." *Beasley v. Sch. Dist. Bd. of Educ. Iberia Par.*, No. 6:21-CV-03276, 2022 WL 807043, at *7 (W.D. La. Feb. 24, 2022) (collecting cases).  Likewise, "courts considering the allegation that mask mandates violate religious freedom uniformly find that such mandates create no undue burden on the free exercise of religion." *Id.*  So Plaintiffs cannot show that the individual Marshal Defendants have violated any principle of constitutional law, much less one that is "clearly established." Rather, the Marshal Defendants were complying with their statutory duties of implementing and executing administrative orders—deemed not to intrude on protected constitutional rights—issued

by the Chief Judge of this Court.  The individual Marshal Defendants are therefore entitled to qualified immunity, and Plaintiffs' claims should be dismissed.

### D.  Plaintiffs Cannot State a Claim Under 42 U.S.C. § 1985

Plaintiffs do not specify which type of claim under 42 U.S.C. § 1985 they purport to assert against the Marshal Defendants.  But even with that pleading defect aside, any claims under § 1985 are foreclosed by binding Fifth Circuit law and are factually implausible.  So those claims should be dismissed.

"Section 1985 prohibits conspiracy to (1) prevent an official from carrying out his or her lawful duties; (2) interfere with a federal court proceeding or with a state court proceeding for the purpose of denying a citizen equal protection of law; or (3) deprive a person or class of persons of equal protection of law."  *Hebert v. United States*, No. 6:21-cv-00545, 2021 WL 2620702, at *6 (W.D. La. June 10, 2021).  By their plain terms, subsection (1) and the second part of subsection (2) of 42 U.S.C. § 1985 are inapplicable to this case because the Plaintiffs are not federal officials and because the Plaintiffs do not allege interference with state court proceedings.  *Cf. Marceaux v. Lafayette City-Par. Consol. Gov't*, 921 F. Supp. 2d 605, 642 (W.D. La. 2013) (finding that the plaintiffs failed to state a claim under 42 U.S.C. § 1985(1) because "there is no allegation in the plaintiffs' complaint that any of the plaintiffs in this case is a federal officer"); *Kush v. Rutledge*, 460 U.S. 719, 725 (1983) ("The second part of § 1985(2) applies to conspiracies to obstruct the course of justice in state courts . . . .").  So Plaintiffs cannot state claims under either of those provisions of § 1985.

Binding Fifth Circuit case law also forecloses any claims under the remaining parts of § 1985.  In *Mack v. Alexander*, the Fifth Circuit stated that 42 U.S.C. §§ 1983 and 1985 "provide a remedy for deprivation of rights under color of state law and do not apply when the defendants are acting under color of federal law."  575 F.2d 488, 489 (5th Cir. 1978).  Further, that rule applies

regardless of whether Plaintiffs attempt to bring claims under § 1985(2) or § 1985(3). *See Cantú*, 933 F.3d at 419 ("Our precedent holds § 1985(3) does not apply to federal officers."); *cf. Ramon v. EEOC*, No. H-85-431A, 1986 WL 501, at *6 (S.D. Tex. Nov. 26, 1986) (citing *Mack* and finding that a claim under § 1985(2) "is barred because the statute does not consent to suit against federal officials acting under color of federal law"). And although the Fifth Circuit has acknowledged that "*Mack* may not have aged well," *Cantú*, 933 F.3d at 419, it has not overruled *Mack*, and this Court has recognized that *Mack*'s holding "is still 'good law' in this Circuit and controls this case," *Johnson v. Dettmering*, No. 19-00744-BAJ-SDJ, 2021 WL 3234623, at *5 (M.D. La. July 29, 2021) (adopting *Cantú*'s discussion of *Mack*). Because Plaintiffs' § 1985 claims against the Marshal Defendants all pertain to actions by federal actors under color of federal law, their claims are foreclosed by *Mack* and can be dismissed on that basis alone.

But even with *Mack* aside, Plaintiffs' allegations fail to state a plausible conspiracy by the Marshal Defendants under the first part of § 1985(2) or under § 1985(3). The Fifth Circuit has emphasized that "[t]he heart of the cause of action accorded by § 1985 is a conspiracy to interfere with a person's civil rights." *Holdiness v. Stroud*, 808 F.2d 417, 424-25 (5th Cir. 1987). "Mere conclusory allegations are insufficient." *Id.* at 424. Plaintiffs fall far short of meeting that standard. To the contrary, there are no allegations in the *Amended Complaint* to explain (1) when the Marshal Defendants entered into an agreement to deprive Plaintiffs of their constitutional rights; (2) with whom they entered into that agreement; (3) why the Marshal Defendants would enter into that agreement; or (4) why the Marshal Defendants intended to deprive Plaintiffs of their constitutional rights. Rather, Plaintiffs resort to conclusory labels, which are legally insufficient to state a claim. *Cf.* ECF Doc. 22, ¶ 154 (referencing an undefined "invidiously discriminatory class-based animus"); *id.* ¶ 160 (stating baldly that the defendants "by definition; conspired to

deprive the Plaintiffs of equal protection, equal privileges, and immunities"); *id.* ¶ 163 ("Defendants, directly or indirectly, worked in concert"); *id.* ¶ 164 ("A <u>discriminatory animus</u> was created by the perceived authority the Defendants gained over Plaintiffs . . . ."); *cf. also Ashcroft*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." (citation and internal quotation marks omitted)).  And without a plausible conspiracy, Plaintiffs cannot state a claim against the Marshal Defendants under any section of § 1985.

Finally, with regard to § 1985(3), the Fifth Circuit has held that this claim "requires some form of class-based discrimination" and "racial animus . . . ."  *Cantú*, 933 F.3d at 419; *see also Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 271 (5th Cir. 2001) ("In this circuit, [courts] require an allegation of race-based conspiracy to present a claim under § 1985(3)." (citation and internal quotation marks omitted)).  But Plaintiffs do not allege racial discrimination in their *Amended Complaint*, nor do they even mention race.  So they cannot state a claim under § 1985(3) for this independent reason.

Because Plaintiffs' purported claims against the Marshal Defendants under 42 U.S.C. § 1985 are legally deficient and factually implausible, those claims should be dismissed.

### E.  Plaintiffs Cannot State a Viable Claim Against the Marshal Defendants Under 42 U.S.C. § 2000a

Plaintiffs have failed to allege a viable 42 U.S.C. § 2000a claim against the Marshal Defendants.  In their *Amended Complaint*, Plaintiffs claim that the Marshal Defendants are subject to liability under 42 U.S.C. § 2000a for repeatedly denying them service at the Federal Courthouse because they were not vaccinated and in violation of their religious beliefs.  ECF Doc. 22, ¶¶ 174, 175, 176, 177.  But 42 U.S.C. § 2000a does not apply to federal courthouses, requiring the dismissal of Plaintiffs' claims.

Although 42 U.S.C. § 2000a prohibits discrimination or segregation in places of "public accommodation," Section 2000a(b) specifically defines a "public accommodation" as follows:

**(b) Establishments affecting interstate commerce or supported in their activities by State action as places of public accommodation; lodgings; facilities principally engaged in selling food for consumption on the premises; gasoline stations; places of exhibition or entertainment; other covered establishments**

Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce, or if discrimination or segregation by it is supported by State action:

(1) any inn, hotel, motel or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;

(2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;

(3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and

(4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

42 U.S.C. § 2000a(b)(1)-(4) (emphasis original).

Importantly, courthouses—whether federal or state—are not considered places of public accommodation for the purpose of 42 U.S.C. § 2000a. *See Poor & Minority Justice Ass'n v. Chief Judge, Tenth Judicial Circuit Court of Fla.*, No. 8:19-cv-2889-T-02TGW, 2020 WL 3286140, at *3 (M.D. Fla. Mar. 27, 2020) ("Courthouses are not listed [in 42 U.S.C. § 2000a(a)-(b)] which renders this Count dismissible."); *Muhammad v. Bethel-Muhammad*, No. 11-0690-WS-B, 2013 WL 5531397, at *5 (S.D. Ala. Oct. 7, 2013) ("Courthouses are not mentioned in the statute, nor do they fall anywhere near the categories that are listed."); *Olague v. Cnty. of Sacramento*,

20

No. 2:11-cv-331-LKK-EFB PS, 2012 WL 3638320, at *6 (E.D. Cal. Aug. 21, 2012) ("The section [42 U.S.C. § 2000a(b)] lists many different venues, but it does not list public courthouses.").   That fact is fatal to Plaintiffs' 42 U.S.C. § 2000a claim, which should therefore be dismissed under Rule 12(b)(6).

### F. The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' State Law Tort Claims

Plaintiffs' remaining state law claims are barred by the United States' sovereign immunity and the Westfall Act, 28 U.S.C. § 2679.  The Court therefore lacks subject matter jurisdiction over those claims.

Without a waiver of sovereign immunity, a person may not sue the federal government or a federal officer in his official capacity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").   In other words, the United States is immune from suit absent an express waiver of its sovereign immunity by federal statute.  *See In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 287 (5th Cir. 2012); *see also Owen v. United States*, 935 F.2d 734, 736 (5th Cir. 1991) ("Louisiana cannot by its law make the United States liable.").   In the absence of such a waiver, sovereign immunity "deprives federal courts of subject matter jurisdiction." *Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006) (citation omitted).

The Federal Tort Claims Act ("FTCA") provides a limited waiver of sovereign immunity of the United States from tort suits.  *See* 28 U.S.C. §§ 1346(b)(1), 2674; *Pleasant v. U.S. ex rel. Overton Brooks Veterans Admin. Hosp.*, 764 F.3d 445, 448 (5th Cir. 2014).   Under the FTCA, recovery in tort is permitted against the United States for damages arising out of the tortious conduct of a federal employee acting in the course and scope of her employment. 28 U.S.C. §§ 1346(b)(1), 2679(b)(1).  It is also well-established that "a suit against the United States under the

FTCA is the exclusive remedy for tort claims arising from the actions of government agencies or employees." *Galvin v. OSHA*, 860 F.2d 181, 183 (5th Cir. 1988) (citing 28 U.S.C. § 2679(a)). Under the Westfall Act, FTCA claims may be brought only against the United States "and not the responsible agency or employee . . . ." *Id.* at 183.

Here, the Plaintiffs have pleaded common law conspiracy claims and Louisiana state law negligent infliction of emotional distress claims against the Marshal Defendants. ECF Doc. 22, ¶¶ 165-171; 178-182. Plaintiffs seek $500,000 in compensatory damages for each of these tort claims. *Id.* at pp. 44, 48. But those claims can only be asserted against the United States under the FTCA, and Plaintiffs have not brought their claims under that Act. Nor could they. The FTCA requires, as a prerequisite to suit, that Plaintiffs submit their claim to the appropriate federal agency for administrative consideration. *See* 28 U.S.C. § 2675(a). Plaintiffs do not allege that they have done so, meaning that their state law claims against the Marshal Defendants should be dismissed for lack of jurisdiction. *See McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222-23 (5th Cir. 1989) (stating that exhaustion of administrative remedies under the FTCA is jurisdictional).

### G. Plaintiffs Have No Right to Empanelment of a Grand Jury

Although not styled as a separate claim in the *Amended Complaint*, Plaintiffs also include a "Demand for Empanelment of Grand Jury Prima Facie Evidence of Criminal Acts by Defendants" and appear to seek a criminal investigation or prosecution of the named defendants under 42 U.S.C. § 1987, 18 U.S.C. §§ 241-242, and 18 U.S.C. §§ 1964, 1968. ECF Doc. 22, ¶ 21. Very little needs to be said in response to these allegations. There is no private cause of action under 42 U.S.C. § 1987 or 18 U.S.C. §§ 241-242. *See Wolfe v. Beard*, No. 10-2566, 2010 WL 5173199, at *12 (E.D. Pa. Dec. 9, 2010) ("The Court agrees that § 1987 does not provide a private right of action . . . ."); *Haffke v. Dallas/Fort Worth Int'l Airport Bd.*, No. Civ.A. 3-

01CV0997-N, 2002 WL 31246827, at *2 (N.D. Tex. Oct. 3, 2002) (stating that 18 U.S.C. §§ 241-

242 "do not provide a basis for civil liability").  And Plaintiffs have not alleged *any* facts to state

a viable (much less plausible) civil RICO claim under 18 U.S.C. § 1961-1968.  *Cf.* 18 U.S.C.

§ 1962(a)-(c) (requiring a showing of "a pattern of racketeering activity").  To the extent that the

Court construes these allegations as separate claims in the *Amended Complaint*, those claims

should also be dismissed.

## IV.    CONCLUSION

The United States requests that the Court grant this motion and dismiss all claims against

the Marshal Defendants.

Baton Rouge, Louisiana, this 12th day of June, 2023.

<div style="margin-left:40%">

UNITED STATES OF AMERICA, by

RONALD C. GATHE, JR.
UNITED STATES ATTORNEY

/s/ Katherine K. Green
Katherine K. Green, LBN 29886
Chase E. Zachary, LBN 37366
Assistant United States Attorney
777 Florida Street, Suite 208
Baton Rouge, Louisiana  70801
Telephone: (225) 389-0443
Fax: (225) 389-0685
E-mail: katherine.green@usdoj.gov
   chase.zachary@usdoj.gov

</div>