**Brandon A. Sibley**
17517 Cline Drive
Maurepas, LA 70449
Phone: (225) 369-7806
Fax: (985) 238-3818
Bsibley97@gmail.com

**Howard G. Brown**
1344 Lakeridge Drive
Baton Rouge, LA 70802
Phone: (504) 756-1987
Fax: (985) 238-3818
hgarybrown@gmail.com

**Melanie Jerusalem**
5130 Woodside Drive
Batton Rouge, LA 70808
Phone: 337-945-9008
jerusalemmelanie@yahoo.com

# IN THE UNITED STATES DISTRICT COURT FOR THE

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SIBLEY, ET AL., <br>     Plaintiffs, <br> V. <br> UNITED STATES MARSHALS SERVICE, <br> et al, <br>     Defendants. | ) <br> ) <br> ) Case No. 3:23-CV-24-SMH-CBW <br> ) <br> ) <br> ) |

# MEMORANDUM IN OPPOSITION TO DOC. 57
# MOTION TO DISMISS BY WALDEN SECURITY

"Laws that single out sincerely held religious beliefs or conduct based on them for sanction are "doubtless . . . unconstitutional." ***Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U. S. 872, 877 (1990)**

COVID-19, along with all associated liberties lost through coercion, duress, and both force and/or threat thereof at the hands of the government either directly or indirectly; a/k/a, Walden Security; does not warrant the true Fourth Estate of The People to turn a blind eye to the negligent infliction of torment, discrimination, and the loss of time-honored liberties: to move freely, associate freely, think independently, and assume the risk of life individually.

Judicial Immunity and all Court appointed Officers seeking derivative immunity are only immunized from suit when the actions are judicial in nature. Therefore, the question of law for this Court is very simple in nature; <u>Can the</u>

*Administrative Procedure Act* nullify the protections afforded to the Plaintiffs by the United States Constitution?

"But what about other laws? Under this Court's current jurisprudence, a law may survive First Amendment scrutiny if it is generally applicable and neutral toward religion. If the law fails either of those tests, it may yet survive but the State must satisfy strict scrutiny. To do that, the State must prove its law serves a compelling interest and employs the least restrictive means available for doing so." See **_Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U. S. 520, 531–532 (1993); Smith, 494 U. S., at 879._** "That takes us to the question whether Maine's rule qualifies as neutral and generally applicable. Under this Court's precedents, a law fails to qualify as generally applicable, and thus triggers strict scrutiny, if it creates a mechanism for "individualized exemptions." **Lukumi, 508 U. S., at 537; see also Fulton v. Philadelphia, 593 U. S. \_, \_- \_\_ (2021) (slip op., at 5–6)**

*Federalist No. 78* - Whoever attentively considers the different departments of power must perceive, that, in a government in which they are separated from each other, the judiciary, from the nature of its functions, will always be the least dangerous to the political rights of the Constitution; because it will be least in a capacity to annoy or injure them. The Executive not only dispenses the honors, but holds the sword of the community. The legislature not only commands the purse, but prescribes the rules by which the duties and rights of every citizen are to be regulated. The judiciary, on the contrary, has no influence over either the sword or

the purse; no direction either of the strength or of the wealth of the society; and can take no active resolution whatever. It may truly be said to have neither FORCE nor WILL, but merely judgment; and must ultimately depend upon the aid of the executive arm even for the efficacy of its judgments.

A fair and independent judicial branch is a cornerstone of our democratic system of government. An independent judicial branch is not an end in itself, but a means of ensuring the ***rule of law***, since only by being free from outside influences can judges decide cases on the law and facts alone. "Since March 2020, we may have experienced the greatest intrusions on civil liberties in the peacetime history of this country.

"***Executive officials*** across the country issued emergency decrees on a breathtaking scale. Governors and local-leaders imposed lockdown orders forcing people to remain in their homes. They shuttered businesses and schools, public and private. They closed churches even as they allowed casinos and other favored businesses to carry on. They threatened violators not just with civil penalties but with criminal sanctions too. They surveilled church parking lots, recorded license plates, and issued notices warning that attendance at even outdoor services satisfying all state social-distancing and hygiene requirements could amount to criminal conduct. They divided cities and neighborhoods into color-coded zones, ***forced individuals to fight for their freedoms in court on emergency timetables***, and then changed their color-coded schemes when defeat in court seemed imminent. Federal executive officials entered the act too. Not just with

emergency immigration decrees. They deployed a public-health agency to regulate landlord-tenant relations nationwide.19 They used a workplace-safety agency to issue a vaccination mandate for most working Americans. They threatened to fire noncompliant employees, and warned that service members who refused to vaccinate might face dishonorable discharge and confinement. Along the way, it seems federal officials may have pressured social-media companies to suppress information about pandemic policies with which they disagreed." ***Arizona v. Mayorkas*, 143 S. Ct. 1312, 1314–15 (2023)**

In essence; state, local, and federal agencies used the Administrative Code to enforce unconstitutional edicts on the The People and used their law enforcement agencies to punish all who did not comply with the newly established state religion of the Branch Covidians.

## JUDICIAL ACTIONS

Plaintiffs have pled with specificity that the actions of the Judiciary were absent all Jurisdiction over the Plaintiffs and that, as such, the individual actions of the Chief Judge are outside her confines of office; hence subjecting her to liability. Therefore, it is logically reasonable that the non-judicial directives by an Executive Branch operation, via Administrative Orders by the Judiciary, do not allow the Defendant, Walden Security nor any of the defendants, to claim derivative judicial immunity.

"Judges are afforded absolute immunity when they **(1)** perform a normal judicial function; unless they are **(2)** acting in the clear absence of all jurisdiction."

***Stump v. Sparkman*, 435 U.S. 349, 357–60, 98 S.Ct. 1099, 1105–06, 55 L.Ed.2d 331 (1978).** For purposes of immunity, the judge's jurisdiction is construed broadly and a judge is not deprived of immunity "because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " ***Id. at 357, 98 S.Ct. at 1105.*** Because " 'some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction,' " the proper inquiry is not whether the judge actually had jurisdiction, or even whether the court exceeded its jurisdictional authority, but whether the challenged actions were obviously taken outside the scope of the judge's power. ***Id. at 357, 98 S.Ct. at 1105 (quoting Bradley v. Fisher, 13 Wall. 335, 352, 20 L.Ed. 646 (1872)). Davis v. Bayless, 70 F.3d 367, 373 (5th Cir. 1995)***

Judges may be exposed to liability for nonjudicial acts, since they generally have no judicial immunity for their administrative, legislative, or executive functions. Judges acting in an administrative capacity do not have absolute immunity from suits for damages; administrative decisions, even though essential to the functioning of the court, have not been regarded as judicial acts.

"While judges enjoy absolute immunity from liability in damages for their judicial or adjudicatory acts, judges are not absolutely immune from liability and damages for administrative, legislative, or executive functions that judges may occasionally be assigned by law to perform; it is nature of function performed—adjudication—rather than identity of actor who performed it—judge—that

determines whether absolute immunity attaches to act. ***Forrester v. White*, *484 U.S. 219, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988)***

**Federalist No. 78** - This simple view of the matter suggests several important consequences. It proves incontestably, that the judiciary is beyond comparison the weakest of the three departments of power; that it can never attack with success either of the other two; and that all possible care is requisite to enable it to defend itself against their attacks. It equally proves, that though individual oppression may now and then proceed from the courts of justice, the general liberty of the people can never be endangered from that quarter; I mean so long as the judiciary remains truly distinct from both the legislature and the Executive. For I agree, that "there is no liberty, if the power of judging be not separated from the legislative and executive powers." And it proves, in the last place, that as liberty can have nothing to fear from the judiciary alone, but would have everything to fear from its union with either of the other departments; that as all the effects of such a union must ensue from a dependence of the former on the latter, notwithstanding a nominal and apparent separation; that as, from the natural feebleness of the judiciary, it is in continual jeopardy of being overpowered, awed, or influenced by its co-ordinate branches; and that as nothing can contribute so much to its firmness and independence as permanency in office, this quality may therefore be justly regarded as an indispensable ingredient in its constitution, and, in a great measure, as the citadel of the public justice and the public security.

"Judge is absolutely immune from damages for actions taken in a judicial capacity unless the judge has acted in the clear absence of all jurisdiction." ***Stiggle v. Tamburini***, *467 F. Supp. 2d 183 (D.R.I. 2006)*

## KEEPING THE PLAINTIFFS SAFE

Walden Security; like all government contractors, federal employees, or officers are under NO duty to keep the Plaintiffs or anyone else "safe." Now, as employees of the Federal Government, all Defendants within this Complaint are bound by the limits of the Constitution. "But nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text. *196 Like its counterpart in the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment was intended to prevent government '**from abusing [its] power, or employing it as an instrument of oppression**,'" ***Davidson v. Cannon***, *supra, 474 U.S., at 348, 106 S.Ct., at 670; see also* ***Daniels v. Williams***, *supra, 474 U.S., at 331, 106 S.Ct., at 665* (" ' "to secure the individual from the arbitrary exercise of the powers of

government," ' " and "to prevent governmental power from being 'used for purposes of oppression' ") (internal citations omitted); ***Parratt v. Taylor, 451 U.S. 527, 549, 101 S.Ct. 1908, 1919, 68 L.Ed.2d 420 (1981) (Powell, J., concurring in result)*** (to prevent the "affirmative abuse of power"). "Its purpose was to protect the people from the State, not to ensure that the State protected them from each other. The Framers were content to leave the extent of governmental obligation in the latter area to the democratic political processes." ***DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195–96, 109 S. Ct. 998, 1003, 103 L. Ed. 2d 249 (1989)***

Oppression is a malicious or unjust treatment of the exercise of power, often under the guise of governmental authority or cultural opprobrium. It is related to regimentation, class society, and punishment. Oppression may be overt or covert, depending on how it is practiced. Walden Security, in a cohesive relationship with the Federal Government for 3 years and 18 days, followed through on each and, every unconstitutional edict issued by the Chief Judge, Shelly D. Dick, forming a public-private nexus accomplishing what the government could not do on its own.

## PUBLIC-PRIVATE PARTNERSHIP

WALDEN SECURITY, in a cohesive relationship with federal employees, under the direction of Chief Judge Shelly D. Dick, Merrick B. Garland, United States Marshal Ronald Davis, United States Marshal William Brown, United States Deputy Marshal Jeff Bowie, and United States Deputy Marshal Michael Attaway other employees thereof; used coercion, duress, and a veiled threat of force to

harass, manipulate, and terrorize the Plaintiffs and those similarly situated in an attempt to circumnavigate the Plaintiffs' rights to due process and equal protection of the laws. This public-private partnership between WALDEN SECURITY and both State and Federal Government agencies is a violation of the constitutional protections afforded to the Plaintiffs and others similarly situated. Justice Holmes eloquently stated "The principle that sustains compulsory vaccination is broad enough to cover cutting the Fallopian tubes. The case comes here upon the contention that the statute authorizing the judgment is void under the Fourteenth Amendment as denying to the plaintiff in error due process of law and the equal protection of the laws." ***Buck v. Bell,*** *274 U.S. 200, 207, 47 S. Ct. 584, 585, 71 L. Ed. 1000 (1927)*

Plaintiffs allege that there is not one legal or lawful reason, precedent, or protection for the Defendants in exercising ownership or interest in the Plaintiff's medical decisions, ability to conscientiously object, and liberty to object to emergency use authorized drugs or medical devices used to 'prevent' infection that are still under clinical trials; therefore, the "conspiracy" to interfere through threats and intimidation violated the Plaintiffs' civil and constitutional rights.

The Free Exercise Clause protects not only the right to believe and worship; it protects the right to perform or abstain from performing certain physical acts in accordance with one's beliefs. Federal statutes, including the *Religious Freedom Restoration Act of 1993* ("RFRA"), support that protection broadly defining the

exercise of religion to encompass all aspects of observance and practice, whether or not central to or required by a particular religious faith.

"[L]aws [that are] 'neutral' toward religion," Congress found, "may burden religious exercise as surely as laws intended to interfere with religious exercise." *42 U.S.C. § 2000bb(a)(2); see also § 2000bb(a)(4).* In order to ensure broad protection for religious liberty, RFRA provides that "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." *§ 2000bb–1(a).* If the Government substantially burdens a person's exercise of religion, under the Act that person is entitled to an exemption from the rule unless the Government "demonstrates that application of the burden to the person— **(1)** is in furtherance of a compelling governmental interest; and **(2)** is the least restrictive means of furthering that compelling governmental interest." *§ 2000bb–1(b). Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 694–95, 134 S. Ct. 2751, 2761, 189 L. Ed. 2d 675 (2014)*

As we explained in *Free Enterprise Fund*, "One can have a government that functions without being ruled by functionaries, and a government that benefits from expertise without being ruled by experts." Ibid. While "[n]o one doubts Congress's power to create a vast and varied federal bureaucracy," the expansion of that bureaucracy into new territories the Framers could scarcely have imagined only sharpens our duty to ensure that the Executive Branch is overseen by a President accountable to the people. *Seila L. LLC v. Consumer Fin. Prot. Bureau, 207 L. Ed. 2d 494, 140 S. Ct. 2183, 2207 (2020)*

If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein. If there are any circumstances which permit an exception, they do not now occur to us. ***W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642, 63 S. Ct. 1178, 1187, 87 L. Ed. 1628 (1943)**

Thousands of cases in this country have been brought to the Supreme Court over issues such as recitation of the Pledge of Allegiance, whereas, a set of test to establish whether the intrusion by government was excessive. "The coercion test provides that, "at a minimum, ... government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.' " ***Id., at 587, 112 S.Ct. 2649 (quoting Lynch, 465 U.S., at 678, 104 S.Ct. 1355).*** Any coercion that persuades an onlooker to participate in an act of ceremonial deism is inconsequential, as an Establishment Clause matter, because such acts are simply not religious in character. As a result, symbolic references to religion that qualify as instances of ceremonial deism will pass the coercion test as well as the endorsement test. This is not to say, however, that government could overtly coerce a person to participate in an act of ceremonial deism. Our cardinal freedom is one of belief; leaders in this Nation cannot force us to proclaim our allegiance to any creed, whether it be religious, philosophic, or political. That principle found eloquent expression in a case involving the Pledge itself, even before it contained the words to which

Newdow now objects. *See West Virginia Bd. of Ed. v. Barnette, 319 U.S. 624, 642, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) (Jackson, J.)*. The compulsion of which Justice Jackson was concerned, however, was of the direct sort—the Constitution does not guarantee citizens a right entirely to avoid ideas with which they disagree. It would betray its own principles if it did; no robust democracy insulates its citizens from views that they might find novel or even inflammatory. *Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 44, 124 S. Ct. 2301, 2327, 159 L. Ed. 2d 98 (2004), abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014)*

However, we must define ceremonial deism: a legal term used in the United States to designate governmental religious references and practices deemed to be mere cultural rituals and not inherently religious because of long customary usage.

The forced association with the Religious Cult of Branch Covidians who performed rituals of subservience and created new customs of mask wearing and taking COVID-19 "vaccines" and the accompanying "boosters" was nothing more than a religious belief, subjectively held assurance, and right of passage, without any facts and evidence to support the safety or efficacy of masking or vaccination.

## TITLE 42 § 1985

To come within the legislation a complaint must allege that the defendants did **(1)** "conspire or go in disguise on the highway or on the premises of another" **(2)** "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities

under the laws." It must then assert that one or more of the conspirators **(3)** did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was **(4a)** "injured in his person or property" or **(4b)** "deprived of having and exercising any right or privilege of a citizen of the United States."

Plaintiffs have facially <u>and</u> factually pled specifically the exact elements needed to move this case forward past the dispositive motions stage.

History repeats itself and whatever may be our wishes, inclinations, or the dictate of our passions; they cannot alter the state of facts and evidence. It is a fact that preferred classes of people were allowed to enter the public courthouse in the Middle District of Louisiana, that Walden Security facilitated this conspiracy under the premises of another, directly deprived the Plaintiffs and those similarly situated of equal protection, equal privileges, and immunities under the laws, and finally caused irreparable harm to the Plaintiffs resulting in money damages and emotional stress for exercising the Plaintiffs rights as a citizen of the United States.

In addition to the specific freedoms protected by the Bill of Rights, "liberty" specially protected by due process clause includes rights to marry, have children, direct education and upbringing of one's children, marital privacy, use contraception, bodily integrity, and abortion. ***U.S.C.A. Const.Amends.5th and 14th***. ***<u>Washington v. Glucksberg</u>, 521 U.S. 702, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997)***

Due process clause guarantees more than fair process, and "liberty" it protections include more than absence of physical restraint. ***U.S.C.A.***

*Const.Amends. 5th and 14th.* **<u>Washington v. Glucksberg</u>**, *521 U.S. 702, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997)*

No showing of mere rational relationship to some colorable state interest would justify substantial infringement of party's constitutional right to free exercise of religion. **<u>Sherbert v. Verner</u>**, *374 U.S. 398, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963)*

Liberties of religion and expression may be infringed by denial of or by placing conditions on benefit or privilege. **<u>Sherbert v. Verner</u>,** *374 U.S. 398, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963)*

Americans do not give up their freedom of religion by participating in the marketplace, partaking of the public square, or interacting with government.

Respectfully Submitted,

_____
Brandon Sibley, *Pro Se*