UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

BRANDON SIBLEY, ET AL., §
§
*PLAINTIFFS,* §
§
VERSUS § CIVIL ACTION NO.
§ 3:23-cv-24-SMH-CBW
SHELLY D. DICK, ET AL., §
§
*DEFENDANTS.* §
§

**DEFENDANT METROPOLITAN SECURITY SERVICES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Metropolitan Security Services, Inc. d/b/a Walden Security ("Walden Security") here replies in support of its Motion to Dismiss, Rec. Doc. # 51. Walden Security's arguments in its motion and supporting memorandum were mostly unrefuted by Plaintiff Brandon Sibley in his "Reply Brief" and "Memorandum." *See* Rec. Docs. 63 & 64.[1] This reply brief will make two arguments: (1) Chief Judge Dick's orders at issue in this case were "judicial acts" not in the "clear absence of all jurisdiction," so absolute judicial immunity applies; (2) even assuming that class-based discrimination were sufficient to state a claim under 42 U.S.C. § 1985(3), vaccination status is not the type of class that would suffice.

Each of Plaintiffs' claims against Walden Security should be dismissed.

**I.   Walden Security is entitled to derivative judicial immunity because it was enforcing orders for which Chief Judge Dick is entitled to absolute judicial immunity.**

Mr. Sibley does not contest that Walden Security is entitled to derivative judicial immunity, but contests that Chief Judge Dick is entitled to absolute judicial immunity in the first place. He

---

[1] Mr. Sibley's documents were signed only by him (Mr. Brown signed one certificate of service), though purport to be on behalf of his co-Plaintiffs as well. *See* Rec. Doc. 64, at 8-9. Mr. Sibley, appearing *pro se*, cannot sign pleadings on behalf of other parties.

is incorrect. Controlling access to courthouse premises is a normal judicial act, and for the Chief Judge of a judicial district to issue such an order is not in the clear absence of jurisdiction, as it is within her inherent authority flowing from the U.S. Constitution.

      **A.     Chief Judge Dick's orders controlling courthouse access were judicial acts.**

The first potential ground for defeating a claim of absolute judicial immunity is that the act was not a "judicial" act. *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005). The Fifth Circuit considers four factors.

> (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.

*Id.* (quoting *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993)). These factors should be "broadly construed in favor of immunity," *id.* at 515, and all factors need not be met, *Morrison v. Walker*, 704 Fed. Appx. 369, 373 (5th Cir. 2017). Each favors immunity here.

*First*, issuing an order controlling access to the courthouse is a normal judicial function. The focus is not whether any specific act is judicial, but whether actions *of that type* are judicial. *See, e.g.*, *Mireles v. Waco*, 502 U.S. 9, 13 (1991) ("[W]e look to the particular act's relation to a general function normally performed by a judge …."); *Malina*, 994 F.2d at 1124. Here, the answer is easy enough: "the courtroom **and courthouse premises** are subject to the control of the court." *Sheppard v. Maxwell*, 384 U.S. 333, 358 (1966) (emphasis added). Consequently, absolute judicial immunity applies to orders exercising control over the courthouse building premises. *See Stevens v. Osuna*, 877 F.3d 1293, 1307 (11th Cir. 2017) ("A judge's authority to maintain control of his courtroom extends to the court building."); *Bell v. Manspeaker*, 34 Fed. Appx. 637, 640-41 (10th Cir. 2002) ("[T]he power to control court security is essential to the court's dispute resolution

function ...."); *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994) ("A judge acts in his judicial capacity when he exercises control over his courtroom."). This factor strongly favors immunity.

*Second*, Chief Judge Dick's order covered the courtrooms, judge's chambers, and other areas within the courthouse. This factor thus favors immunity. *See Ballard*, 413 F.3d at 516 (concluding this factor met when action took place "in the hallway near [the judge's] chambers").

*Third*, Plaintiffs' allegations arise from their entry (or attempted entry) to the courthouse to pursue litigation, *see* First Am. Compl. ¶¶ 51, 56, Doc. # 22, so this factor favors immunity.

*Fourth*, while it does not appear that Plaintiffs were specifically seeking to visit Chief Judge Dick, their claims arise from an action taken by Chief Judge Dick in her official capacity, so this factor favors immunity as well.

Each factor favors a finding that the orders at issue here were a "judicial acts," so absolute judicial immunity cannot be circumvented on that ground.

## B. Chief Judge Dick's orders were not in the clear absence of all jurisdiction.

Judicial immunity is also not appropriate if an action was taken in "clear absence of all jurisdiction." *Ballard*, 413 F.3d at 515. Mr. Sibley's argument on this point appears to be that Chief Judge Dick's order was unconstitutional. *See* Sibley Reply Brief – Rec. Doc. # 64, at 3. But that is no different from saying that Chief Judge Dick erred, and error is not a basis to deny immunity. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978). The orders were not, in fact, issued in the "clear absence of all jurisdiction."

Issuing an order controlling access to the courtroom, and the courthouse, is within the inherent authority of a judge. *See Sheppard*, 384 U.S. at 358; *see also Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their ... courtrooms ...."). This inherent authority to "control the courtroom" is not expressly mentioned "in a constitution" or "statute." *Ex parte Herrod*, No. 5:22-CV-100-RWS-JBB, 2023 WL 146239, at *2 (E.D. Tex.

3

Jan. 10, 2023). The authority instead "must necessarily result to our Courts of justice from the nature of their institution …." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812)). A United States court "bec[o]me[s] possessed" of its inherent authority "[t]he moment [it is] called into existence and invested with jurisdiction over any subject …." *Ex parte Robinson*, 86 U.S. 505, 510 (1873); *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 561 (3d Cir. 1985). Congress has established the Middle District of Louisiana, 28 U.S.C. § 98(b), and has established district courts in each judicial district, 28 U.S.C. § 132(a).[2] Those Congressional acts flow from the Constitution, which vests "the judicial Power" to hear a variety of cases in any inferior courts that Congress establishes. *See* U.S. Const. art. III, §§ 1-2.

Because there is an unbroken chain of authority linking the U.S. Constitution to the orders at issue in this case, those orders were not issued in the "clear absence of all jurisdiction."

**II.    Even if binding Fifth Circuit authority requiring racial animus to state a claim under 42 U.S.C. § 1985(3) were ignored, vaccination status is not the type of class for which relief could be sought.**

Mr. Sibley claims that racial animus is not required to state a claim under 42 U.S.C. § 1985(3). Many reported Fifth Circuit cases say the contrary. *See* Walden Security Memo. in support of Mot. to Dismiss – Rec. Doc. # 57-1, p. 9. Regardless, in other circuits where racial animus is apparently not a hard-and-fast requirement, courts have refused to consider vaccination status a class pursuant to which a claim could be stated under § 1985(3). *See Ford v. Northam*, No. 7:22-CV-00122, 2023 WL 2767780, at *9 (W.D. Va. Mar. 31, 2023); *see also Andreadakis v. Ctr. for Disease Control & Prevention*, No. 3:22CV52 (DJN), 2022 WL 2674194, at *8 (E.D. Va.

---

[2] The Middle District of Louisiana was established on December 18, 1971. Act of Dec. 18, 1971, Pub. L. No. 92-208, § 3(a), 85 Stat. 741, 741 (codified as amended at 28 U.S.C. § 98).

4

July 11, 2022) (granting motion to dismiss § 1985(3) claim based on disability-status and mask requirement).

**III.    Conclusion.**

Mr. Sibley's responsive documents offer no persuasive reason to deny any component of Walden Security's motion to dismiss. Walden Security respectfully requests that Plaintiffs' claims against Walden Security be dismissed as a matter of law.

Dated:  June 22, 2023

Respectfully Submitted,

CHAMBLISS, BAHNER & STOPHEL, P.C.

By: /s/ Nathan L. Kinard
    Justin L. Furrow (admitted Pro Hac Vice)
    Nathan L. Kinard (admitted Pro Hac Vice)
Liberty Tower, Suite 1700
605 Chestnut Street
Chattanooga, TN  37450
Tel:  423.757.0231
Fax:  423.508.1231
Email: jfurrow@chamblisslaw.com
      nkinard@chamblisslaw.com

~and~

THE KULLMAN FIRM

By: /s/ Elizabeth Bailly Bloch
    Christine S. Keenan, T.A. (No. 23293)
    Elizabeth Bailly Bloch (No. 37591)
4605 Bluebonnet Boulevard, Suite A
Baton Rouge, Louisiana 70809
Telephone: (225) 906-4250
Facsimile: (225) 906-4230
E-mail:csk@kullmanlaw.com
      ebb@kullmanlaw.com
*Attorneys for Defendant Metropolitan Security Services, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of June, 2023, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record. I further certify that a copy has been forwarded via first class mail, postage prepaid and properly addressed, to *pro se* Plaintiffs and via email as follows:

Brandon Albert Sibley
17517 Cline Drive
Maurepas, LA 70449
Email: bsibley97@gmail.com

Howard Gary Brown
1344 Lakeridge Drive
Baton Rouge, LA 70802
Email: hgarybrown@gmail.com

Melanie Jerusalem
5130 Woodside Drive
Baton Rouge, LA 70808
Email: jerusalemmelanie@yahoo.com

*/s/ Elizabeth Bailly Bloch*
Elizabeth Bailly Bloch