UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

BRANDON SIBLEY, ET AL.                CIVIL ACTION NO. 23-0024

VERSUS                                JUDGE S. MAURICE HICKS, JR.

SHELLY D. DICK, ET AL.                MAGISTRATE JUDGE WHITEHURST

## MEMORANDUM RULING

Before the Court are two Motions to Dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See Record Documents 50 & 57. The first motion was filed by Defendant Chief Judge Shelly D. Dick ("Chief Judge Dick") of the Middle District of Louisiana. See Record Document 50. Plaintiff Melanie Jerusalem ("Jerusalem") opposed the Motion to Dismiss. See Record Document 61. The second motion was filed by Defendant Metropolitan Security Services, Inc. d/b/a Walden Security ("Walden Security"). See Record Document 57. Plaintiff Brandon Sibley ("Sibley") opposed the Motion to Dismiss. See Record Documents 63& 64. For the reasons set forth below, both Motions to Dismiss (Record Documents 50 & 57) are **GRANTED**.

## BACKGROUND

Acting *pro se*, Plaintiffs Howard Brown, Sibley, and Jerusalem filed the instant lawsuit alleging a violation of constitutionally protected rights (Bivens action), violation of 42 U.S.C. § 1985 (conspiracy to violate constitutional rights), common law conspiracy, violation of 42 U.S.C. § 2000(a), and grossly negligent infliction of emotional distress. See Record Document 22 at 8. Their complaint centers around three COVID-related orders issued by Chief Judge Dick in the Middle District of Louisiana. See id. at 9. Plaintiffs maintain that these orders – Administrative Order Nos. 2020-8, 2021-5, and 2022-3 – were unconstitutional on their face. See id. They seek a declaratory judgment that the Administrative Orders ("AOs") are unconstitutional, to enjoin the enforcement of

the AOs, and damages for each alleged denial of entry to the Russell B. Long Federal Building and United States Courthouse ("the Courthouse").

Administrative Order No. 2020-8 (Pandemic Related Curtailed Operations) was issued on June 30, 2020 and provided in pertinent part:

> All employees and persons having business in the Russell B. Long Courthouse and Federal Building shall be required to wear masks when in any public space in the buildings, shall observe social distancing, and shall observe all posted signs and placards.

Record Document 22-1 at 3. Administrative Order No. 2021-5 (Pandemic Related Curtailed Operations) was issued on July 22, 2021 and provided in pertinent part:

> All employees and persons having business in the Russell B. Long Federal Building and United States Courthouse and the United States Bankruptcy Court shall be required to wear masks when in any public space in the buildings, shall observe physical distancing, and shall observe all posted signs and placards, regardless of vaccination status.

Record Document 22-3 at 3. Administrative Order No. 2022-3 (Revised Pandemic Masking Requirements) ("AO 2022-3) was issued on March 15, 2022 and provided in pertinent part:

> [P]ursuant to the authority granted to the Chief Judge presiding over a primary courthouse building and pursuant to the approval granted by the Facility Security Committee governing multi-tenant facilities, fully vaccinated individuals are no longer required to wear a mask within the Russell B. Long Federal Building and United States Courthouse and the U.S. Bankruptcy Court ("the Courthouses"). In order to unmask, individuals having business in the Courthouses must provide proof of vaccination upon entry. Acceptable forms of proof of vaccination include the Centers for Disease Control's (CDC's) COVID-19 Vaccination Record Card issued by the vaccine provider or, for attorneys and others permitted to enter the Courthouses with personal electronic devices, the SMART Health Card record that can be found in the LA Wallet application for mobile devices. If proof of vaccination is not provided upon entry, the individual must wear a mask at all times in the Courthouses. Individuals who are not fully vaccinated shall be required to wear masks. Anyone who fails or refuses to comply will be required to leave the Courthouses immediately. This Order does not prohibit individuals from electing to wear a mask, regardless of vaccination status.

Record Document 22-2 at 2-3. "Fully vaccinated" was "defined as two weeks after receiving the second dose of a two-dose vaccine (Pfizer or Moderna) or the single-does vaccine (Johnson & Johnson)." Id. at 2 n.1. All three AOs were signed by Chief Judge Dick. The orders were carried out by the United States Marshals Service ("USMS") and/or Walden Security, acting pursuant to a contract with, and under the direction of, the USMS. See Record Document 22 at 18, 21, 26, & 32. On March 29, 2023, Chief Judge Dick issued Administrative Order No. 2023-2 ("AO 2023-2"). See United States District Court, Middle District of Louisiana, https://www.lamd.uscourts.gov/orders/public_orders/AO%202023-2.pdf (last visited March 11, 2025). It rescinded AO 2022-3 and provided that "entrants to the Russell B. Long Federal Building and United States Courthouse and the U.S. Bankruptcy Court are no longer required to wear a mask, regardless of vaccination status." Id.[1]

At various times, Plaintiffs were denied entry to the Courthouse since they did not provide proof of vaccination and would not wear a mask. Plaintiffs allege that Chief Judge Dick acted outside the scope of her judicial capacity as a United States District Judge in issuing the AOs. See Record Document 22 at 5. More specifically, Plaintiffs contend that Chief Judge Dick defied "logic and reason in forcing medical decisions upon the general public; requiring the Plaintiffs and others similarly situated . . . to either take experimental

---

[1] Federal Rule of Civil Procedure Rule 201(b) provides that "the court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Judicial notice of matters of public record includes materials like court orders. See Davis v. Bayless, 70 F.3d 367, 372 (5th Cir. 1995) (taking judicial notice of state court orders). Generally, the court does not look beyond the face of the pleadings in deciding a Rule 12(b)(6) motions. However, courts are permitted to consider materials subject to judicial notice. See Norris v. Hearst Trust, 500 F.3d 454, 461 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

3

drugs or to forcibly wear a mask to enter the Federal Courthouse." Id. at 6. Plaintiffs submit that Chief Judge Dick acted without "any legal or lawful authority." Id.

Walden Security is a federal contractor that employed Court Security Officers ("CSOs") at the Courthouses. See id. at 20. Plaintiffs allege that the CSOs employed by Walden Security "acted in a wanton disregard for the rule of law, hiding behind capricious and arbitrary administrative orders." Id. Additionally, they maintain the CSOs conspired "to violate inherent, sacred, and inviolable rights." Id.

Chief Judge Dick and Walden Security have now moved to dismiss all of Plaintiffs' claims against them. See Record Documents 50 & 57. Chief Judge Dick asserts absolute judicial immunity and further notes that Plaintiffs' claims for declaratory and injunctive relief are moot since the AOs have been rescinded. See Record Document 51 at 2. Walden Security asserts derivative absolute immunity. See Record Document 57-1 at 4-5.

## LAW AND ANALYSIS

### I.  Rule 12(b)(1) and 12(b)(6) Standards.

"Under Federal Rule of Civil Procedure 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." Turner v. Scott, No. 18-00998, 2019 WL 3771751, at *1 (M.D. La. Aug. 9, 2019) (quoting In re FEMA Trailer Formaldehyde Prods. Liability Litigation, 668 F. 3d 281, 286 (5th Cir. 2012)). Furthermore, "[a] motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)." Id. (citing Benton v. United States, 960 F. 2d 19, 21 (5th Cir. 1992)). The party asserting jurisdiction has the burden of proof under Rule 12(b)(1). See Wells v. Dep't of

4

Children and Family Servs., No. 23-354, 2024 WL 3319925, at *2 (M.D. La. Jan. 24, 2024).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos Cnty., Tex., 981 F. 2d 237, 243 (5th Cir. 1993). Additionally, courts must accept all allegations in a complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009).  However, courts do not have to accept legal conclusions as facts.  See id.  Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standards to survive such a motion.  See id. at 678–79, 1949–50. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted.  See id.

"Although a 'pro se complaint is to be construed liberally with all well-pleaded allegations taken as true,' a pro se plaintiff nevertheless must plead sufficient factual matter that supports her claim to relief in order to survive a Rule 12(b)(6) motion to dismiss." Craig v. Bolner, No. 15-00815, 2017 WL 4228757, at *1 (M.D. La. Sept. 22, 2017) (quoting Johnson v. Atkins, 999 F. 2d 99, 100 (5th Cir. 1993)).  Furthermore, "[e]ven a liberally construed pro se civil rights complaint, however, must set forth facts giving rise to a claim on which relief may be granted." Id.

**II.     Sovereign Immunity.**

An action against a federal official in his official capacity is actually a suit against the sovereign – the United States. See McCarthy ex rel. Travis v. Hawkins, 381 F.3d 407, 413-414 (5th Cir. 2004).  Federal courts generally lack jurisdiction to entertain such claims

5

in accordance with principles of sovereign immunity. See McCarrell v. Davis, No. A-17-CV-668-LY-ML, 2017 WL 11221248, at *2 (W.D. Tex. July 31, 2017), report and recommendation adopted, No. 1:17-CV-668-LY, 2017 WL 11221249 (W.D. Tex. Aug. 25, 2017). The United States may not be sued without its consent. See United States v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965 (1983). The existence of consent is a prerequisite for jurisdiction. See id. "A waiver of sovereign immunity cannot be implied but must be unequivocally expressed." United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351 (1980). "Thus, a party seeking to bring a claim against a federal official acting in his or her official capacity – and therefore, as a matter of law, against the United States—must identify a specific waiver of immunity in order to establish jurisdiction." McCarrell, 2017 WL 11221248, at *2.

### III. Absolute Judicial Immunity and Derivative Judicial Immunity.

"Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11, 112 S. Ct. 286, 288 (1991). Judicial immunity cannot be overcome by allegations of bad faith or malice. See id. Absolute judicial immunity is defeated in only two instances: (1) the "judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity"; and (2) "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. "The scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." Stump v. Sparkman, 435 U.S. 349, 356, 98 S.Ct. 1099, 1105 (1978).

In determining whether an act is judicial in nature, courts must consider four factors: "(1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the

6

judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his [or her] official capacity." Laird v. Spencer, No. 20-30237, 2025 WL 79826, at *3 (5th Cir. Jan. 13, 2025). The Fifth Circuit broadly construes these factors in favor of immunity. See id. Court are permitted to extend immunity even if one or more of the factors is not satisfied. See id.

"Derived judicial immunity shields individuals who act pursuant to explicit directions or procedures of a judge, such as a court clerk, a bailiff, or a sheriff involved in judicial process." Brown v. United States Postal Inspection Serv., 206 F. Supp. 3d 1234, 1251 (S.D. Tex. 2016), citing Clay v. Allen, 242 F.3d 679, 682 (5th Cir.2001). "The significant reasons underlying the grant of absolute immunity to those officials who carry out the facially valid orders of a court with proper jurisdiction are not difficult to discern." Mays v. Sudderth, 97 F.3d 107, 112 (5th Cir. 1996). "[E]nforcing or executing a court order is intrinsically associated with a judicial proceeding." Bush v. Rauch, 38 F.3d 842, 847 (6th Cir.1994). Immunity afforded for enforcement of a valid court order "is essential to insure the fearless and unhesitating execution of court orders necessary if the court's authority and ability to function are to remain uncompromised." Mays, 97 F.3d at 112. Additionally, "because judges are absolutely immune from suit for judicial actions taken pursuant to their jurisdiction, to deny similar protection to government officials executing their orders would render the officials lightning rods for harassing litigation aimed at judicial orders." Id. at 113. Officials charged with executing a facially valid court order have no choice but to do so and they "should not be required to make the . . . choice between disobeying the court order or being haled into court to answer for damages." Id. Thus, courts generally "conclude that an official acting within the scope of his authority is absolutely immune

7

from a suit for damages to the extent that the cause of action arises from his compliance with a facially valid judicial order issued by a court acting within its jurisdiction." Id.

## IV. Analysis.

### A. Chief Judge Dick.

Chief Judge Dick was sued in her official and individual capacities. Even affording Plaintiffs' complaint a liberal construction, they have failed to identify any waiver of sovereign immunity. Accordingly, sovereign immunity deprives this court of jurisdiction to entertain any of Plaintiffs' claims against Chief Judge Dick in her official capacity. See McCarrell, 2017 WL 11221248, at *2; see also Rivera v. United States, 907 F. Supp. 1027 (W.D. Tex. 1995) ("Absent a specific waiver of sovereign immunity, this Court lacks subject matter jurisdiction."); Smith v. Krieger, 389 F. App'x 789, 795 (10th Cir. 2010) (explaining that the plaintiff bears the burden to identify a specific waiver of sovereign immunity to bring official capacity claims against a federal district court judge).

As to Plaintiffs' individual capacity claims against Chief Judge Dick, this Court must consider absolute judicial immunity. In Coombs v. United States, No. 21-CV-3761 (LTS), 2021 WL 2453496, at *2 (S.D.N.Y. June 15, 2021), the plaintiff alleged that certain standing orders in response to COVID-19 were unconstitutional and sued the Chief Judge of the Southern District of New York, who had issued the standing orders. The court held:

> Issuing standing orders is within the scope of former Chief Judge McMahon's authority and jurisdiction, and she is therefore absolutely immune from suit for any claim arising from adoption of Standing Order M10-468. Plaintiff's claims against Judge McMahon are therefore dismissed with prejudice based on absolute judicial immunity.

Id. at *3. Here, Chief Judge Dick's AOs proscribed the conduct of civil and criminal court proceedings and courthouse access during the novel COVID-19 pandemic. As noted in Coombs, these actions are normal judicial functions within Chief Judge Dick's authority

8

and jurisdiction. See also Odom v. Martin, 229 F.3d 1153 (6th Cir. 2000) (holding judges "entitled to judicial immunity for their issuance of administrative orders regarding the interpretation of the PLRA to be followed in their respective courts, as the issuance of such orders are judicial functions."). Chief Judge Dick is entitled to absolute judicial immunity. Her Motion to Dismiss (Record Document 50) is **GRANTED** in its entirety.[2]

### B. Walden Security.

Walden Security does not dispute that it carried out the AOs at issue, all the time acting pursuant to a contract with, and under the direction of, the USMS. Plaintiffs make no suggestion that any Walden Security personnel did anything more than what was required by the AOs. Plaintiffs' claims against Walden Security directly relate to its personnel acting as directed by the AOs.

This Court has already determined that Chief Judge Dick is entitled to absolute immunity since Plaintiffs' claims flow from AOs issued as part of her normal judicial functions and within her authority and jurisdiction. In this instance, Walden Security is likewise entitled to derivative judicial immunity. This holding is essential to guarantee the seamless execution of court orders and to prevent the CSOs from becoming "lightning rods for harassing litigation aimed at judicial orders." Mays, 97 F.3d at 112-113. Walden Security's Motion to Dismiss (Record Document 57) is **GRANTED** in its entirety.

### C. Declaratory and Injunctive Relief.

To the extent necessary, the Court will now address Plaintiffs' claims for declaratory and injunctive relief, namely that the AOs are unconstitutional and that this

---

[2] Absolute judicial immunity bars both federal and state law claims. See McCoy v. Bogan, No. CV 20-388-JWD-SDJ, 2022 WL 4492781, at *7 (M.D. La. Sept. 9, 2022), report and recommendation adopted, No. CV 20-388-JWD-SDJ, 2022 WL 4490159 (M.D. La. Sept. 27, 2022), citing Sharp v. Palmisano, 2013 WL 5969661, at *4 (E.D. La. Nov. 8, 2013) (judicial immunity bars state law claims under Louisiana law).

9

Court should enjoin the enforcement of such orders. As noted previously, AO 2023-2 rescinded the previous COVID-19 restrictions, specifically stating that "entrants to the Russell B. Long Federal Building and United States Courthouse and the U.S. Bankruptcy Court are no longer required to wear a mask, regardless of vaccination status. See United States District Court, Middle District of Louisiana, https://www.lamd.uscourts.gov/orders/public_orders/AO%202023-2.pdf (last visited March 11, 2025). Because the AOs at issue in this case have all been rescinded, there is no longer a concrete effect on Plaintiffs. Resolution of Plaintiffs' disputes regarding the lawfulness of the AOs no longer presents a live case or controversy.

The Fifth Circuit recently discussed mootness in the context of challenges to statutes, orders, and ordinances, reasoning:

> Mootness is one of the doctrines that ensures federal courts are only deciding live cases or controversies. Campbell-Ewald Co. v. Gomez, ––– U.S. –––, 136 S. Ct. 663, 669, 193 L.Ed.2d 571 (2016). A matter is moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." Knox v. Serv. Emps. Int'l Union, Local 1000, 567 U.S. 298, 307, 132 S.Ct. 2277, 183 L.Ed.2d 281 (2012) (quotations omitted).
> It makes sense, then, that a case challenging a statute, executive order, or local ordinance usually becomes moot if the challenged law has expired or been repealed. See, e.g., Veasey v. Abbott, 888 F.3d 792, 799 (5th Cir. 2018) ("Ordinarily, a[n] [action] challenging a statute would become moot by the legislature's enactment of a superseding law."). Once the law is off the books, there is nothing injuring the plaintiff and, consequently, nothing for the court to do. See N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York, ––– U.S. –––, 140 S. Ct. 1525, 1526, 206 L.Ed.2d 798 (2020) (holding that a claim for injunctive relief against a law was moot when the law was amended to give "the precise relief that [the plaintiffs] requested"); Amawi v. Paxton, 956 F.3d 816, 819, 821 (5th Cir. 2020) (dismissing an appeal as moot because a statutory amendment "provided the plaintiffs the very relief their lawsuit sought").

Spell v. Edwards, 962 F.3d 175, 178-179 (5th Cir. 2020). Notwithstanding, a defendant cannot moot a case simply by ending its alleged unlawful conduct once sued. See Already, LLC v. Nike, Inc., 568 U.S. 85, 91, 133 S.Ct. 721, 727 (2013). "Government

officials in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties." Yarls v. Bunton, 905 F.3d 905, 910-911 (5th Cir. 2018).  Absent evidence to the contrary, courts "assume that formally announced changes to official governmental policy are not mere litigation posturing." Id. at 911.  Here, Plaintiffs have not presented any contrary evidence.  Moreover, the rescission of the pandemic masking requirements in this case resulted from a fundamental change in public health conditions,  that is, the end of the Federal COVID-19 Public Health Emergency Declaration.  See Record Document 51 at 9 n.2.

This case also does not fall within the "exceptional situation[]" covered by the "capable-of-repetition doctrine."  Spencer v. Kemna, 523 U.S. 1, 17, 118 S.Ct. 978, 988 (1998).  This exception applies when two circumstances are simultaneously present:  (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.  See id.  Focusing on circumstance number two, Plaintiffs cannot meet their burden to establish the capable-of-repetition doctrine exception applies.  Plaintiffs' challenge of the AOs focused on the issuance of a mask mandate to combat the spread of a novel pandemic in its early stages.  The impacts of the COVID-19 pandemic were felt worldwide and the majority of state and federal government agencies had masking mandates or other COVID-19 restrictions in place. There is no reasonable likelihood that Plaintiffs' fact-specific dispute will repeat itself, nor that Chief Judge Dick will issue another mask mandate due to a serious public health danger arising from a communicable disease.  See, e.g., Spell, 962 F.3d at 180 (holding that challenge to an expired COVID-19 stay-at-home order was not capable of repetition

11

yet evading review because it was "speculative, at best" that a similar order raising the same issues would recur); County of Butler v. Governor of Pennsylvania, 8 F.4th 226, 230-231 (3rd Cir. 2021) (similar); Brach v. Newsom, 38 F.4th 6, 15 (9th Cir. 2022) (similar); Resurrection Sch. v. Hertel, 35 F.4th 524, 530 (6th Cir. 2022) (similar). The Fifth Circuit requires more than a mere theoretical possibility that the challenged conduct will occur again. See Lopez v. City of Houston, 617 F.3d 336, 340 (5th Cir. 2010). For these reasons and to the extent necessary, Chief Judge Dick's Motion to Dismiss (Record Document 50) Plaintiffs' claims for declaratory and injunctive relief is **GRANTED**.

## CONCLUSION

For the reasons set forth above, the Motions to Dismiss (Record Documents 50 & 57) filed by Chief Judge Dick and Walden Security are **GRANTED**. All of Plaintiffs' claims against Chief Judge Dick and Walden Security are **DISMISSED WITH PREJUDICE**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 12th day of March, 2025.

_____
United States District Judge